(31 Abb. N. C. 342.)

### In re SAWYER et al.

### In re MULLER.

(Common Pleas of New York City and County, Special Term. May 15, 1894.)

ASSIGNMENT FOR BENEFIT OF CREDITORS—PREFERENCES—WAGES.

> A contract of employment provided that an employé should receive a certain salary and a percentage of the profits of the business, if they should amount to a certain sum for the year. Before the year expired, and before the specified amount of profits was realized, the employer made an assignment. *Held*, that he thereby terminated the contract of employment, and the percentage on the profits which had then been realized became due immediately, and the employé was entitled to preference therefor, as for wages due.

Claim by Gustav Muller for wages or salary earned by him, as an employé of Sawyer, Wallace & Co., prior to the execution by them of an assignment for the benefit of creditors. The referee disallowed the preference claimed, and the assignee moves to confirm the referee's report.

The claimant, Gustav Muller, had been for upwards of five years, and was at the time of the execution of the assignment, an employé of the assignors. His employment since May 1, 1890, had been under a written contract, which provided that he should continue in charge of what was known as the "Petroleum Department" of the assignors' business for one year from May 1, 1890, and should receive a salary of $5,000 per annum, and additional compensation equal to 7½ per cent. on the net profits of the business in his charge, provided such net profits amounted to not less than $20,000 for the year. There was no provision for payment by installments, but the con-

tract was entire,—for one year's services for the stipulated compensation. On September 4, 1890, the assignors failed, and made a general assignment for the benefit of their creditors. The net profits made by Muller up to that date on all business in his charge, then wholly completed and closed, amounted to $10,628.87. All transactions then entered upon, but unclosed, were included in a separate arrangement made by Muller with the assignee, whereby he went on and completed them as the employé of the assignee, and they were eliminated from the account of Muller with the assignors. Muller thereupon presented to the assignee his claim for a balance of salary unpaid at the date of the assignment, as a preferred claim under the statute. The preference was disallowed by the assignee, and the claim rejected for that reason. The claim was tried before John Yard, Esq.,—a referee appointed to hear and determine disputed claims; and he found that the account of Muller with the assignors, at the time of the execution of the assignment, stood as follows:

| | |
|---|---|
| Guarantied salary, at the rate of $5,000 per annum, for four months and four days, from May 1, 1890, to September 4, 1890, | $1,721 41 |
| Contingent salary on profits realized up to September 4, 1890, being equal to 7½% on $10,628.87 .......................... | 797 16 |
| Making a total of guarantied and contingent salary, at the date of said assignment, of............................ | $2,518 57 |
| That of this amount there had been paid to and received by said Muller, prior to the date of said assignment............ | 1,860 39 |
| Leaving a balance unpaid at the date of said assignment of.. | $658 18 |

The referee found that Muller had a valid claim against the assigned estate for $658.18, but that it was not a preferred claim, under the statute, for the reason that it was not actually owing at the time of the execution of the assignment. Exceptions were filed on behalf of Muller, and a motion was made on behalf of the assignee to confirm the report, and overrule the exceptions.

### Cardozo & Nathan (Edgar J. Nathan, of counsel), for the assignee—

Maintained that inasmuch as Mr. Muller had already received from the assignors, to the time of the assignment, on account of his salary, more than his proportionate part of the guarantied $5,000 ($1,721.41), the unpaid balance, of $658.18, must be deemed to have consisted wholly of the balance unpaid of the 7½ per cent. on the $10,628.87 profits; that inasmuch as Mr. Muller was not to be entitled to such percentage unless the profits for the entire year amounted to at least $20,000, and they had not amounted to that at the time of the assignment, and whether they would have amounted to that, and he become entitled to his percentage on anything, could not be determined until the end of the year, his right to receive his percentage on the $10,628.87 was, at the date of the assignment, still contingent, and the $658.18 was therefore not actually owing to him at the time of the assignment, and for that reason was not preferred by the statute.

### Eugene Frayer, on behalf of the claimant—

Maintained that the 7½ per cent. on the profits was as much a part of Muller's salary as the $5,000; that there had been no such appropriation of the payments by the parties exclusively to the $5,000 part of the salary, as suggested by Mr. Nathan, and that the assignee could not now make the appropriation, to the disadvantage of the employé; that the argument of the assignee and the finding of the referee that the $658.18 was not actually owing at the date of the assignment were based on an entire misconception of the character and legal basis of the claim, viz. on the idea that the claim was based upon the written contract between the parties, by the terms of which no part of either the $5,000 or the 7½ per cent. was due or payable until the end of the year, and the 7½ per cent. not then, unless the net profits

amounted to at least $20,000, whereas the claim was in fact based upon an implied contract on the part of the assignors to pay Muller the value of the services actually rendered by him to them at their request prior to the assignment; that the execution of the assignment by the assignors amounted to a breach of the written contract by them, whereby they prevented Muller from completing his contract, and earning either the $5,000 or the 7½ per cent. stipulated for in the written contract, and was a waiver by them of compliance with the $20,000 proviso (Woolner v. Hill, 93 N. Y. 576, 586); that, upon such breach of the contract by the assignors, Muller, as he might lawfully do, elected to treat the written contract as rescinded, and resort to the contract thereupon implied by law, on the part of the assignors, to pay him the value of the services actually rendered by him to them at their request (Keedy v. Long, 71 Md. 385, 18 Atl. 704), the broken and rescinded written contract, in such case, being resorted to as evidence to determine the measure of such value (Koon v. Greenman, 7 Wend. 121, 123; King v. Brown, 2 Hill, 485; Ludlow v. Dole, 1 Hun, 715, 62 N. Y. 617; Allen v. Affleck, 64 How. Pr. 383); that inasmuch as the services which formed the consideration for the assignors' obligation to pay Muller had already been rendered, and such consideration thus fully performed by him, the sum thus earned was then actually due and owing, and could have been sued for immediately upon the assignment (Prickett v. Badger, 1 C. B. (N. S.) 296; Mayne, Dam. (4th Ed.) 211, 218); that the execution of the assignment itself made it instantly due and payable; that there was no difference in this respect between the $5,000 and the 7½ per cent. part of the salary, and that, inasmuch as the $658.18 claimed by Muller was thus actually owing at the time of the execution of the assignment, the statute preferred it, and Muller's claim to a preference should be sustained; that the statute was "a beneficent as well as a remedial statute, and should be liberally construed, so as to meet a wrong and advance the remedy which the legislature had in mind in passing it (In re Heath, 46 Hun, 114, 117); that the fallacy in the argument of the assignee from the $20,000 proviso was that it assumed the continued existence and validity of that provision of the contract, and attempted to enforce it against Muller, at the same time that they prevented him from complying with it, and after the assignors had, by their assignment, waived compliance with it, and after the entire contract had been wholly wiped out of existence, as a valid, existing contract, by the assignors' breach of it, and Muller's election thereupon to treat it as rescinded, and resort to the contract implied by law thereupon, to pay him the value of the services actually rendered; that their whole argument was fallacious and unsound, for the reason that it assumed that the claim was based upon the written contract, whereas it was in fact based upon the contract implied by law on the breach of the written contract by the assignors, and Muller's election thereupon to treat it as rescinded.

PRYOR, J. Obviously, the percentage of profits was as essentially a portion of Muller's "wages" or "salary" as the $5,000. Of this percentage, the referee finds that, at the date of the assignment, Muller had earned $658.18. By the act of the assignors in terminating the contract, they prevented the contingency which might have made Muller's percentage more or less, or nothing, and fixed it at this sum. By the act of the assignors in terminating the contract, which would have postponed payment till the end of the year, this sum instantly became due and payable, and is recoverable by action, with interest from the date of the assignment. In every sense of the word, it was actually owing to Muller. The statute is "a beneficent as well as a remedial provision, and should be liberally construed, so as to meet a wrong and advance the remedy which the legislature had in mind." In re Heath, 46 Hun, 114. Motion denied, with costs.