In re LUXTON & BLACK CO.

(Supreme Court, Appellate Division, Fourth Department. December 9, 1898.)·

CORPORATIONS—DISSOLUTION—CLAIM FOR WAGES.

> Commissions earned by one employed in selling pianos for a company, under an agreement to pay him a fixed salary of so much per week and' a per cent. on sales, together approximating what his services were reasonably worth, are "wages," within the meaning of Laws 1885, c. 376, conferring a preference on claims against a corporation for wages where· a receiver is appointed.

Appeal from special term, Erie county.

In the matter of the voluntary dissolution of the Luxton & Black Company a motion was made by Frederick Ullman to compel the receiver to pay his claim against it as a preferred claim. The motion· was denied, and he appeals. Reversed.

From January 11, 1896. to January 26, 1897, one T. A. Glaser was in the employ of the Luxton & Black Company, a corporation engaged in the business of selling pianos at the city of Buffalo. Glaser's position was that of· salesman. He was a man of considerable experience in the business, and by the terms of his employment he was to receive for his services the sum of $15 per week and 5 per cent. upon all sales made by him. It was estimated that under this arrangement he would earn from $25 to $30 per week, which would be the amount of compensation ordinarily paid to a salesman of his· years and experience, and it is conceded that his services were easily worth that sum to his employers. In 1897 the Luxton & Black Company instituted proceedings for its dissolution, and on the 26th day of January in that year

the corporation passed into the hands of temporary receivers. At this time Glaser had been paid his weekly salary in full, but there was due him from the company the sum of $174.95 for commissions earned by him under the terms of his contract. Subsequently he assigned his claim for these commissions to one Frederick Ullman, who brought this proceeding to compel the receiver to pay the same as a preferred claim. A motion to that effect was made at special term, which was denied, and from the order denying the same this appeal is brought.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and WARD, JJ.

Frederick Ullman, in pro. per.
August Becker, for respondent.

ADAMS, J. The extent to which the legislature intended to create preferences in favor of the employés of a corporation has been a somewhat mooted question in this state, and it is one which in some of its aspects is still unsettled. Under the act of 1885, which provides that "where a receiver of a corporation created or organized under the laws of this state and doing business therein, other than insurance and moneyed corporations, shall be appointed, the wages of the employés, operatives and laborers thereof shall be preferred to every other debt or claim against such corporation and shall be paid by the receiver from the moneys of such corporation which shall first come to his hands" (Laws 1885, c. 376), it was held that the word "employés," followed, as it was, by the words "operatives and laborers," was to be construed in a restricted and limited sense, and not so comprehensively as to include any and all persons employed by corporations, irrespective of their service and the relation which they hold to the company; and, as thus construed, a claim by a person who had been employed upon an annual salary of $2,000 and a commission of 2 per cent., to sell goods in China, was adjudged not entitled to preference. People v. Remington, 45 Hun, 329, affirmed 109 N. Y. 631, 16 N. E. 680. But in a more recent case the court of appeals, while recognizing "the difficulty, if not impracticability," of defining the word "employés" with such precision as to meet all cases, declares that the undoubted purpose of the act above referred to was to confer priority upon claims against a corporation for the wages of its employés, "including in the designation all who, in common understanding, hold that relation to the corporation"; and "that bookkeepers, and all persons employed to make sales of merchandise or of property manufactured by the corporation, are, we think, 'employés,' within the meaning of the act, and their compensation earned is 'wages,' whether such persons are employed by the day or month or year, and whether the compensation is denominated 'salary' or 'wages' in the contract of employment." Palmer v. Van Santvoord, 153 N. Y. 612, 47 N. E. 915. The construction thus given to the language of the act of 1885 in the case last cited was quite likely influenced somewhat by the fact that the legislature had just enacted what is known as the "Labor Law," which law contains a provision similar to that in the act of 1885, omitting, however, the words "operatives and laborers," and giving to employés of a corporation substantially the same protection for the payment of their wages as is conferred by the general assignment act. Laws 1897, c. 415, § 8.

In the light, then, of the liberal rule of construction laid down by the court of appeals in the case to which reference has just been made, we find that the case before us presents these two propositions for our consideration: First, was the claimant's assignor an "employé" of the Luxton & Black Company? and, second, are the commissions earned by him to be treated as "wages"?

As respects the first of these two propositions, but little need be said, for it is undisputed that Glaser was a salesman in the employ of the company; that as such he was at all times subject to the direction and control of his employer, who was entitled to command his entire time. He is therefore brought directly within the definition of the term "employé," as laid down in the case of Palmer v. Van Santvoord, supra.

The second proposition cannot perhaps be so readily or easily answered, but nevertheless we are persuaded that the appellant is entitled to the answer for which he contends, and that such. is the case can be best demonstrated by determining what definition should be given to the word "wages," as used in the act of 1885. The Century Dictionary defines a "wage" to be "that which is paid for a service rendered"; and, in the case of Glaser, it appears that he was employed to sell pianos, that he was a person of experience in that business, and that his services were in consequence valuable to his employer. It further appears that such services usually commanded from $25 to $30 per week, but that, instead of paying him this sum, it was agreed that he should receive a stated salary of $15 per week and a commission of 5 per cent. upon all sales made by him, which it was estimated would average nearly or quite as much more; so that, as a matter of fact, he was in all probability entitled to receive just about what it is conceded his services were worth. Now, does the fact that a portion of his compensation was to some extent uncertain make such portion, when actually earned, any the less "wages"? There might be force in such a contention, perhaps, if Glaser, under the terms of his contract, had been at liberty to engage in some other employment to which the selling of pianos upon commission was a mere incident; but such, it appears, was not the case. On the contrary, his time and ability, as we have seen, belonged to his employer, and he was bound to devote both to his employer's interests. In these circumstances, it is difficult to furnish any good reason for saying that the compensation which he was to receive by way of commissions, although it came in such a form as to stimulate activity and was measured entirely by the success which attended his efforts to effect sales, was not "wages," within the true intent and meaning of the statute. Were we to hold that the compensation of a laborer must be fixed, definite, and certain in order to give to it the character of a wage, we should establish a rule which would require a radical readjustment of the terms and conditions upon which many kinds of business are conducted. To illustrate: It is customary in not a few manufacturing establishments to pay employés for their services "by the piece," and whatever is thus earned is doubtless regarded, as it certainly ought to be, by both employé and employer, as the equivalent of wages. Again, many railroad companies pay their conductors, engineers, and firemen a certain sum for every mile they

run each day; but will it be contended that compensation earned in this manner is not "that which is paid for a service rendered"? In a case arising under the general assignment act, where a party was employed for a year at a fixed salary, with the addition of a certain percentage upon the net profits of the business, provided they amounted to a certain sum, it was held that the percentage of profits was as essentially a portion of the claimant's wages as was his salary. In re Sawyer, 31 Abb. N. C. 342, 29 N. Y. Supp. 1097. This, it may be said, is a somewhat extreme case, but it nevertheless enunciates a correct principle, and one which, while possibly not capable of universal application, is nevertheless the one which we think should be applied to the present case. As a result of the views which we entertain and to which we have here given expression, the order appealed from must necessarily be reversed.

Order reversed, with costs, and motion granted, with $10 costs. All concur.