WILSON E. PALMER, Respondent, *v.* SEYMOUR VAN SANTVOORD
et al., as Receivers of THE WALTER A. WOOD MOWING AND
REAPING MACHINE COMPANY, Appellants.

1. CORPORATION IN HANDS OF RECEIVER — L. 1885, CH. 376 — PREF-
ERENCE TO WAGES — "EMPLOYEES." While the word "employees" in
the statute (L. 1885, ch. 376) giving a preference to the wages of the
employees, operatives and laborers of a domestic corporation in the hands
of a receiver, is used in a restricted and limited sense, it is of larger import
than the words "operatives and laborers" which follow it, and is not con-
fined to those who perform manual labor, occupy a strictly subordinate
position, and receive daily wages only.

2. PURPOSE OF ACT — "EMPLOYEES." The purpose of the act of 1885
(Ch. 376) is that the debts of the corporation for the wages of employees,
including in the designation all who in common understanding held that
relation to the corporation, should be the first charge on the assets.

3. "EMPLOYEES" — "WAGES." *It seems,* that bookkeepers or persons
employed to make sales of merchandise, or of property manufactured by
the corporation, are "employees" within the meaning of the act, and
that their compensation earned is "wages," whether such persons are
employed by the day, month or year, and whether the compensation is ·
denominated "salary" or "wages" in the contract of employment.

4. SALES AGENT AND MECHANIC. *Held,* that a person employed by a
mowing machine company at a compensation of $100 per month, to sell
or solicit sales of the machines manufactured by the company, and to set
up, take down, and repair machines sold, was an "employee," and that
his claim for wages was entitled to a preference, under the act of 1885.

*Palmer* v. *Van Santvoord,* 17 App. Div. 194, affirmed.

(Submitted June 22, 1897; decided October 5, 1897.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the third judicial department, entered May
13, 1897, which affirmed an order of Special Term directing
the defendants as receivers to pay the claim of Wilson E.
Palmer for wages, etc.

The respondent was employed by the Walter A. Wood
Mowing & Reaping Machine Company, a domestic corpora-
tion, prior to the appointment of the appellants as its receivers.
The nature of his employment is stated in the case as follows :

Wilson E. Palmer "was employed by the said Walter A.

Wood Company to set up machines, and to take them down and to fix the same when out of repair; to go from place to place and fix and set up the machines of said company for farmers to whom the machines had been sold — to unpack the machines and to repack them and ship same to company when necessary. Also to sell or solicit sales of the machines of said corporation, and did, in the discharge of his duties as the employee, operative and laborer of said company, sell machines for them, and that as such operative, employee and laborer he set up and repaired machines for said company while in their employ as aforesaid, going from place to place so to do; took the machines from the railroad, unpacked same, bolted together and screwed together the same, and did all necessary work to make said machines work, bolting them together and fitting them so they would work, and that he performed manual labor as well as the labor of selling machines, and obeyed and carried out the instructions, orders and directions given to him by said corporation through its officers and servants."

His compensation was $100 per month.

The question submitted is whether he was an "employee, operative or laborer," and his claim for wages against said company entitled to a preference under the provisions of chapter 376, Laws of 1885, which enacts that "Where a receiver of a corporation created or organized under the laws of this State and doing business therein, other than insurance and moneyed corporations, shall be appointed, the wages of the employees, operatives and laborers thereof shall be preferred to every other debt or claim against such corporation, and shall be paid by the receiver from the moneys of such corporation which shall first come to his hands."

*G. B. Wellington* for appellants. The question upon appeal relates to the proper interpretation of chapter 376 of the Laws of 1885. The respondent was not an employee, operative or laborer within the meaning of that act. (*People* v. *Remington*, 45 Hun, 329; 109 N. Y. 631; *Gurney* v. *A. & G. W. R. Co.*, 58 N. Y. 367; *Brown* v. *A. B. C. F. Co.*, 52 Hun,

151; *In re Stryker*, 73 Hun, 327; *People* v. *B. B. Co.*, 91 Hun, 313; L. 1848, ch. 40, § 18; *Wakefield* v. *Fargo*, 90 N. Y. 217; *Short* v. *Medberry*, 29 Hun, 39; L. 1890, ch. 368; *People* v. *City of Buffalo*, 57 Hun, 577.)

*Amasa J. Parker* for respondent. Plaintiff was an employee, operative and laborer within the meaning of the statute and the court was right in granting the order appealed from. (*Gurney* v. *A. & G. W. R. Co.*, 58 N. Y. 358; *Brown* v. *A. B. C. F. Co.*, 52 Hun, 151; *People* v. *B. B. Co.*, 91 Hun, 313.)

ANDREWS, Ch. J. The work which the claimant was employed to perform was in part the work of a mechanic, and in part that of an agent for the sale of machines manufactured by the corporation. His duties involved both the performance of manual labor and the exercise of tact and skill as a sales agent of the company. He was, while acting in either capacity, an "employee" of the company within the general and etymological meaning of the word. The word is defined in the Century Dictionary as "one who works for an employer; a person working for salary or wages; applied to any one so working, but usually only to clerks, workmen, laborers, etc., and but rarely to the higher officers of a government or corporation or to domestic servants." It is insisted, however, on the part of the receivers that he was not an "employee, operative or laborer" within the meaning of the statute of 1885. It must be conceded that the word "employees" was not used in the statute in its broadest sense. This, as well by reason of the words "operatives and laborers," with which it is associated, as of the decisions upon this and cognate statutes. If the legislature intended, by the act of 1885, to prefer all debts owing by a corporation (other than an insurance or moneyed corporation), of which a receiver should be appointed, to "employees," using the word in its largest sense, the words "operatives and laborers" with which it is associated are superfluous. The use of these associated

words indicates that the word "employees," by which they are preceded, was used in a restricted and limited sense, and was not intended to comprehend all who were employed by the corporation, irrespective of the nature of their service and the relation which they held to the company. This restricted meaning was given to the word in the learned and able opinion of Judge FOLLETT in the case of *People* v. *Remington* (45 Hun, 329), which was affirmed by this court upon his opinion. (109 N. Y. 631.) The case of *People* v. *Remington* arose under the statute of 1885, the same statute involved in the present case, and it was there decided that neither the superintendent of a corporation employed at an annual salary, nor an attorney employed to render professional services for the corporation, nor a foreign agent for the sale of the goods of the corporation in China, who was to receive a commission on sales made by him in addition to an annual salary of $2,000, were "employees" within the statute, and that their earnings were not "wages of employees" entitled to preferential payment. In construing the 18th section of the General Manufacturing Corporation Act, which imposes liability upon stockholders in corporations for debts owing to "laborers, servants or apprentices," the courts have confined its application to persons occupying subordinate positions, and have excluded from its protection the officers and managers of corporations, on the ground that they were not laborers or servants within the meaning of the act. (*Coffin* v. *Reynolds*, 37 N. Y. 640; *Dean* v. *De Wolf*, 82 id. 626; *Hill* v. *Spencer*, 61 id. 274; *Wakefield* v. *Fargo*, 90 id. 213.)

We must assume, under the case of *People* v. *Remington*, that the word "employees" in the act of 1885 is not to be accorded its widest lexicographical meaning, and it is difficult, if not impracticable, to define with precision the line of separation. The intention of the lawgiver is to be sought first in the words of a statute, and, if they are obscure, in the occasion of the enactment and in the policy which dictated it, when that can be legitimately ascertained. Prior or contemporaneous

legislation on the same general subject may be resorted to in aid of the interpretation, but not to control the clear language of subsequent statutes. Words are not to be rejected as superfluous when it is practicable to give to each a distinct and consistent meaning. "The good expositor," says Lord COKE, "makes every sentence have its operation to suppress all the mischiefs; he gives effect to every word of the statute; he does not construe it so that anything should be vain and superfluous, nor yet make exposition against express words, but so expounds it that one part may stand agreeable with the other and all may stand together." (Coke's Rep. part VIII, p. 310.) There is much difficulty in giving full force to the words of Lord COKE in the construction of many modern statutes, in view of the diffuseness and inaccuracy of the language used, but they furnish a useful guide and suggest a needed caution. When the words of the statute do not perfectly express the intention, they are to have a rational interpretation, to be collected from the words and the policy which may be reasonably supposed to have dictated the enactment, and the interpretation may be rigorous or liberal, depending upon the interests with which it deals. (Rutherford's Inst. p. 104.) "Except," says BRONSON, J., in *Waller* v. *Harris* (20 Wend. 561), "in relation to a few old statutes which were long since overwhelmed by commentaries and decisions, the current of authority at the present day is in favor of reading statutes according to the natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending their operation."

The word "employees" in the statute of 1885 is a word of larger import than the words "operatives and laborers" which follow it (*Gurney* v. *Atlantic & G. W. Ry. Co.*, 58 N. Y. 358), and while it may embrace the latter classes, it is not confined to those who perform manual labor only, and to construe it in the narrowest sense as embracing those classes only, would violate one of the accepted canons of construction to which we have referred, that each word used in an

enumeration in a statute of several classes or things, is presumed to have been used to express a distinct and different idea. It is doubtless true that, from the lack of technical accuracy and precision in the framing of statutes, a word of large import is often followed by words of narrower meaning, expressing what is included in the larger term, but this does not justify a restriction of the scope and meaning of the larger term to what is expressed in the words which follow, unless the context points to such a construction. A larger word interjected between words of limited meaning in an enumeration of persons or things, may furnish a reason for confining the broader term to persons or things of the same relative kind and importance as in the preceding and subsequent words, because the larger term would naturally be the first to be used if it was intended to have a broader sense than those with which it is associated. ( *Wakefield* v. *Fargo, supra.*) The principle that particulars are naturally mentioned in the order of their importance, and that larger particulars are not to be deprived of meaning by subsequent enumeration of things which may be included in the primary word, does not apply to general words following particular ones, for there the rule is to construe them as applicable to persons or things *ejusdem generis.* (*Sandiman* v. *Breach,* 7 B. & C. 96 ; *People* v. *N. Y. & M. B. Ry. Co.,* 84 N. Y. 565.) An early example of this construction is found in 2 Rep. 46, where it was held that a statute treating of " deans, prebendaries, parsons, vicars and others having spiritual jurisdiction," did not extend to bishops. But this rule is not without exception. The statute of Marlbridge (Cap. 19) makes provision " touching essoignes in counties, hundreds or in courts baron or in other courts of record," and it was held to extend to the king's courts of record at Westminster, for otherwise the general words would be void, for there were no lower courts than those specified. (2 Inst. 136.)

The contention that the word " employees," in the statute of 1885, should be confined in meaning to persons occupying a strictly subordinate position, as day laborers and the like, is

urged in part upon the view that the statute was intended to protect that class of laborers only, who, as a rule, are dependent upon their daily wages for subsistence, and who enter upon their employment with no view of giving credit to the corporation for their wages, and, expecting prompt payment, had no occasion to rely on its credit or solvency. The courts have given a strict construction to acts imposing liability upon stockholders in corporations for debts owing to " laborers, servants and apprentices." The rule of strict construction has been applied to those acts upon the ground stated by Chief Justice SHAW in *Gray* v. *Coffin* (9 Cush. 199): " To create any individual liability of members for the debt of a corporation or body politic created by law and regarded as a legal being, distinct from that of all the members comprising it, and capable of contracting and being contracted with as a person, is a wide departure from established rules of law, founded in considerations of public policy, and depending solely upon provisions of positive law. It (the statute) is, therefore, to be construed strictly, and not extended beyond the limits to which it is plainly carried by such provisions of statute." (Cited in *Chase* v. *Lord*, 77 N. Y. 1. See, also, CHURCH, C. J., *Gurney* v. *R. R.*, *supra*.)

It may perhaps be doubted whether the principle of strict construction has not been carried too far in some of the cases, exempting stockholders from liability under the Manufacturing Corporations Act of 1848. But the act of 1885 proceeds, we think, upon a broader policy as to the persons to be protected than has been attributed to the acts imposing liability upon stockholders. The act deals with the distribution of the assets of insolvent corporations, or corporations in the hands of receivers. The purpose of the act is that the debts of the corporation for the wages of employees, including in the designation all who in common understanding held that relation to the corporation should be the first charge on the assets, and that business debts should be postponed thereto.

The act of 1885, in this respect, was supplementary to and in *pari materia* with the act, chapter 328 of the Laws of

1884, which amended the general act of 1877, regulating general assignments by insolvent debtors so as to provide "that in all assignments made in pursuance of this act the wages and salaries actually owing to the employees of the assignees or assignors shall be preferred before any other debts." Formerly incorporated companies in this state were by statute disabled from making a general assignment in contemplation of insolvency. (*Sibell* v. *Remsen*, 33 N. Y. 95.) Whether this rule has not been changed by recent legislation may admit of question. (See sec. 27 of Assignment Act of 1877; Stock Corporation Law, as amended by chap. 688, Laws of 1892, § 48.) But at least the amended act of 1884 covered the case of insolvent assignments by natural persons, and prescribed that debts due to employees of the assignor should be preferred. The act of 1885, now in question, enacted substantially the same rule of preference in case of domestic corporations in the hands of a receiver, a situation generally due to insolvency.

In *People* v. *Remington* the claims of the superintendent, of the attorney and of an agent for the general management of the foreign business of the corporation in China, to a preference under the act of 1885, were disallowed on the ground that they were not "employees" within the common acceptation and meaning of the word. The superintendent was substantially an officer. The attorney was engaged in an independent business, and his debt arose in the prosecution of that business. The case of the foreign agent is the one which might admit of a difference of opinion. The mere fact of the employment being such as might be designated an agency would not alone, we conceive, take the case out of the protection of the act. The case of bookkeepers or persons employed to make sales of merchandise, or of property manufactured by the corporation, are, we think, "employees," within the meaning of the act, and their compensation earned is "wages," whether such persons are employed by the day, or month or year, and whether the compensation is denominated "salary" or "wages" in the contract of employment.

We think the order below was correct and it should, there-fore, be affirmed.

BARTLETT, J. (dissenting). This case involves the intention and policy of the legislature when it sought to prefer "the wages of the employees, operatives and laborers" of insolvent corporations (Ch. 376, Laws of 1885). If the word "employee" is to be treated as the correlative of "employer" absolutely and without restriction, it then follows that the words "operatives and laborers" in the statute are mere surplusage and every person employed by a corporation on a salary is preferred.

In construing a statute force must be given to all its provisions if possible.

In the case at bar the use of the word "wages" is significant and restrictive and excludes fixed salaries which are not properly described as wages.

Furthermore, some effect must be given to the words "operatives" and "laborers," which follow the word "employee" in the statute.

I think they qualify the latter word and, taken in connection with the word "wages," limit its general meaning.

It is not every employee, in the broad, general sense, who is preferred, but the employee, operative or laborer who receives wages as such, whose services are menial or manual, and who depends upon his daily wage for present support.

In the case before us the employee received compensation at the rate of one hundred dollars a month from a mowing machine company.

It was his duty to go from place to place and sell or solicit sales of machines, to take them down, fix and set them up for the purchasers.

I am of opinion claimant was a traveling salesman on a salary, and only performed such duties as are common in the sale of machines or instruments of complicated design. This monthly salary is no more wages, as it seems to me, than the salary and commissions of the salesman sent to China by E.

Remington & Sons. (*People* v. *Remington*, 45 Hun, 329, 342; affirmed on opinion of the General Term, 109 N. Y. 631.)

The order appealed from should be reversed.

O'BRIEN, HAIGHT, MARTIN and VANN, JJ., concur with ANDREWS, Ch. J., for affirmance; BARTLETT, J., reads for reversal; GRAY, J., absent.

Order affirmed.