In the Matter of the Voluntary Dissolution of THE LUXTON & BLACK COMPANY.

FREDERIC ULLMAN, Claimant, Appellant; HERBERT V. McMULLEN, Receiver of THE LUXTON & BLACK COMPANY, Respondent.

*Insolvent corporation — a preferential payment of an employee as well for commissions on sales as for salary.*

A salesman employed by a corporation which is entitled to command his entire time and ability, is to be considered an " employee " of such corporation within the meaning of chapter 376 of the Laws of 1885; and when his compensation as agreed upon consists partly of a specified weekly salary and partly of commissions upon sales made by him, he is entitled to preferential payment of both from the assets of the corporation, of whose property a receiver has been appointed in proceedings for its dissolution.

APPEAL by the claimant, Frederic Ullman, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 17th day of August, 1898, denying the claimant's motion to compel Herbert V. McMullen, as receiver of the Luxton & Black Company, to pay the claim presented by the claimant as a preferred claim.

From January 11, 1896, to January 26, 1897, one T. A. Glaser was in the employ of the Luxton & Black Company, a corporation engaged in the business of selling pianos at the city of Buffalo.

Glaser's position was that of salesman. He was a man of considerable experience in the business, and by the terms of his employment he was to receive for his services the sum of fifteen dollars per week and five per cent upon all sales made by him. It was estimated that under this arrangement he would earn from twenty-five dollars to thirty dollars per week, which would be the amount of compensation ordinarily paid to a salesman of his years and experience; and it is conceded that his services were easily worth that sum to his employers.

In 1897 the Luxton & Black Company instituted proceedings for its dissolution, and on the twenty-sixth day of January in that year the corporation passed into the hands of temporary receivers. At this time Glaser had been paid his weekly salary in full, but there was due him from the company the sum of $174.95 for commissions earned by him under the terms of his contract. Subsequently he assigned his claim for these commissions to one Frederic Ullman, who brought this proceeding to compel the receiver to pay the same as a preferred claim. A motion to that effect was made at Special Term, which was denied, and from the order denying the same this appeal is brought.

*Frederic Ullman*, appellant, in person.

*August Becker*, for the respondent.

ADAMS, J.:

The extent to which the Legislature intended to create preferences in favor of the employees of a corporation has been a somewhat mooted question in this State, and it is one which in some of its aspects is still unsettled. Under the act of 1885, which provides

that "Where a receiver of a corporation created or organized under the laws of this State and doing business therein, other than insurance and moneyed corporations, shall be appointed, the wages of the employees, operatives and laborers thereof shall be preferred to every other debt or claim against such corporation, and shall be paid by the receiver from the moneys of such corporation which shall first come to his hands" (Laws of 1885, chap. 376), it was held that the word "employees," followed as it was by the words "operatives and laborers," was to be construed in a restricted and limited sense, and not so comprehensively as to include any and all persons employed by corporations irrespective of their service and the relation which they hold to the company; and, as thus construed, a claim by a person who had been employed upon an annual salary of $2,000 and a commission of two per cent to sell goods in China was adjudged not entitled to preference. (*People* v. *Remington*, 45 Hun, 329; affd., 109 N. Y. 631.)

But in a more recent case the Court of Appeals, while recognizing the difficulty, if not impracticability, of defining the word "employees" with such precision as to meet all cases, declares that the undoubted purpose of the act above referred to was to confer priority upon claims against a corporation for the wages of its employees, "including in the designation all who in common understanding held that relation to the corporation," and that "bookkeepers or persons employed to make sales of merchandise or of property manufactured by the corporation are, we think, 'employees' within the meaning of the act; and their compensation earned is 'wages,' whether such persons are employed by the day or month or year, and whether the compensation is denominated 'salary' or 'wages' in the contract of employment." (*Palmer* v. *Van Santvoord*, 153 N. Y. 612.)

The construction thus given to the language of the act of 1885 in the case last cited was quite likely influenced somewhat by the fact that the Legislature had just enacted what is known as the "Labor Law," which law contains a provision similar to that in the act of 1885, omitting, however, the words "operatives and laborers," and giving to employees of a corporation substantially the same protection for the payment of their wages as is conferred by the General Assignment Act. (Laws of 1897, chap. 415, § 8.)

In the light then of the liberal rule of construction laid down by the Court of Appeals in the case to which reference has just been made, we find that the case before us presents these two propositions for our consideration : *First*, was the claimant's assignor an employee of the Luxton & Black Company, and, *second*, are the commissions earned by him to be treated as " wages ? "

As respects the first of these two propositions but little need be said, for it is undisputed that Glaser was a salesman in the employ of the company ; that as such he was at all times subject to the direction and control of his employer, who was entitled to command his entire time. He is, therefore, brought directly within the definition of the term " employee" as laid down in the case of *Palmer* v. *Van Santvoord (supra)*.

The second proposition cannot, perhaps, be so readily or easily answered, but, nevertheless, we are persuaded that the appellant is entitled to the answer for which he contends, and that such is the case can be best demonstrated by determining what definition should be given to the word " wages " as used in the act of 1885.

The Century Dictionary defines a " wage " to be " that which is paid for a service rendered ; " and in the case of Glaser it appears that he was employed to sell pianos, that he was a person of experience in that business, and that his services were in consequence valuable to his employer. It further appears that such services usually commanded from twenty-five dollars to thirty dollars per week, but that, instead of paying him this sum, it was agreed that he should receive a stated salary of fifteen dollars per week and a commission of five per cent upon all sales made by him, which it was estimated would average nearly or quite as much more ; so that, as a matter of fact, he was in all probability entitled to receive just about what it is conceded his services were worth.

Now, does the fact that a portion of his compensation was to some extent uncertain make such portion, when actually earned, any the less " wages ? " There might be force in such a contention perhaps if Glaser, under the terms of his contract, had been at liberty to engage in some other employment to which the selling of pianos upon commission was a mere incident, but such, it appears, was not the case. On the contrary, his time and ability, as we have seen, belonged to his employer, and he was bound to devote both to his

employer's interests. In these circumstances it is difficult to furnish any good reason for saying that the compensation which he was to receive by way of commissions, although it came in such a form as to stimulate activity and was measured entirely by the success which attended his efforts to effect sales, was not " wages " within the true intent and meaning of the statute.

Were we to hold that the compensation of a laborer must be fixed, definite and certain in order to give to it the character of a wage, we should establish a rule which would require a radical readjustment of the terms and conditions upon which many kinds of business are conducted. To illustrate : It is customary in not a few manufacturing establishments to pay employees for their services " by the piece," and whatever is thus earned is doubtless regarded, as it certainly ought to be, by both employee and employer, as the equivalent of wages.

Again, many railroad companies pay their conductors, engineers and firemen a certain sum for every mile they run each day ; but will it be contended that compensation earned in this manner is not " that which is paid for a service rendered ? "

In a case arising under the General Assignment Act, where a party was employed for a year at a fixed salary with the addition of a certain percentage upon the net profits of the business, provided they amounted to a certain sum, it was held that the percentage of profits was as essentially a portion of the claimant's wages as was his salary. (*Matter of Sawyer*, 31 Abb. N. C. 342.)

This, it may be said, is a somewhat extreme case, but it nevertheless enunciates a correct principle, and one which, while possibly not capable of universal application, is, nevertheless, the one we think should be applied to the present case.

As a result of the views which we entertain and to which we have here given expression, the order appealed from must necessarily be reversed.

All concurred.

Order reversed, with costs, and motion granted, with ten dollars costs.