1024    55 NEW YORK SUPPLEMENT    (Sup. Ct.

and 89 New York State Reporter.

[Banks & Bros.' 9th Ed.] p. 3280; Laws 1896, c. 908) provided, as to this (section 180), that "no corporation shall have or exercise any corporate franchise or powers, or carry on business in this state until such tax shall have been paid." The life of a corporation dates from its organization, and not from the time it begins to do business (Thomp. Corp. § 217); and, under Railroad Law, supra (section 2), the subscribers of the certificate "become a corporation" by executing, acknowledging, and filing the paper, such certificate being presumptive evidence of incorporation (Gen. Corp. Law, § 9; Gen. Laws, c. 35; 2 Rev. St. [Banks & Bros.' 9th Ed.] p. 970). From the wording of the restrictions above quoted, as to the certificate of the railroad commissioners and the payment of the tax, it is apparent that the organization of the corporation precedes the restriction, and that the corporate existence is recognized, the benefits of incorporation to be deferred until the condition is complied with. See Thomp. Corp. §§ 226, 241.

We have not to determine whether the defendant's existence as a corporation could be successfully assailed in a direct proceeding on the part of the state, the rule being that, where an action is brought against an alleged corporation by a party contracting with it, the corporate existence is to be upheld if, colorably, there has been an organization under the statute; it being held that the corporation exists de facto, for the purpose of the case, and that both parties are estopped from asserting the contrary. Railroad Co. v. Cary, 26 N. Y. 75, 77; Vinegar Co. v. Schlegel, 143 N. Y. 537, 543, 38 N. E. 729; Thomp. Corp. §§ 218, 3683, et seq. In the present case the dealings of the parties were carried on throughout with acquiescence in the fact that the defendant was a corporation, and any defense that the defendant had no power to make the contract, because not authorized to do business, cannot be entertained. It would seem, certainly, that this very agreement—one for the making of a preliminary survey and maps—was within the defendant's powers, and expressly reserved from the restriction above noted (Railroad Law, § 59); but, assuming the contrary, the agreement being executed and the purported corporation having had the benefit of it, the plea of ultra vires could not be interposed, for the transaction was opposed to no principle of public policy, and the defendant was estopped fom availing itself of this defense (Arms Co. v. Barlow, 63 N. Y. 70; Peck v. Doran-Wright Co. [Sup.] 10 N. Y. Supp. 401; Thomp. Corp. §§ 6015, 6016).

The judgment should therefore be affirmed, with costs. All concur.

---

## In re KIMBERLY.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1899.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—PREFERRED CLAIMS—REPEAL.

 Laws 1897, c. 624 (passed May 19, 1897), amending General Assignment Act, § 29 (Laws 1877, c. 466), by providing that the wages or salaries actually due to the employés of the assignor for services rendered within a year of the assignment shall have preference over other debts, by im-

plication repeals Laws 1897, c. 266 (passed April 15, 1897), amending said section 29 by adding to the exemption provision a proviso that the claims of truckmen for the carriage of goods shall be deemed wages.

**2. SAME—SALARY OR WAGES.**

A claim for cartage due to one engaged in a general trucking business, the work being done by the piece, and monthly bills rendered, it not appearing that claimant personally performed the services, is not entitled to preference as an employé's claim for salary or wages, under Laws 1897, c. 624.

### Appeal from Erie county court.

In the matter of the general assignment of John L. Kimberly. John J. Lynch presented a petition stating that he "did and performed services for the said John L. Kimberly as cartman and truckman of merchandise, from August, 1897, up to the time of making such assignment, and that said claim, as your petitioner is informed and believes, is a preferred claim, under the statute of this state, to the amount of $569.47"; that the claim had been presented to the assignee, and was rejected by him as a preferred claim. The parties, on the 31st of May, appeared before the county court, and a referee was named "to hear and determine" the claim. The referee, on the 30th of July, 1898, made a report awarding to the claimant $569.47, and in his report stated as a conclusion of law, viz.: "That the said claim of John J. Lynch, for wages for his work as cartman and truckman for the said John L. Kimberly from August 1 to December 31, 1897, is a preferred claim, under the general assignment law of the state of New York, and, as such, is entitled to be paid ratably with the wages and salaries of other employés of the said John L. Kimberly; and judgment is hereby directed establishing the said claim of the claimant, John J. Lynch, as a preferred claim to share ratably with other employés in the distribution of the assets in the hands of the assignee, with costs and disbursements, which are hereby directed to be taxed." Exceptions were filed to the referee's report; judgment entered thereon on the 2d of August, 1898; and on the 15th of August the assignee appealed to this court. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

Thomas C. Burke, for appellant assignee.

Nathaniel W. Norton, for respondent John J. Lynch.

George J. Sicard, for Merchants' Bank of Buffalo.

HARDIN, P. J. Upon the hearing before the referee, the claimant testified that he had an account against the assignor, commencing on the 2d day of August, 1897—

"And continues through the months of August, September, October, November, and December, from day to day, up to the 31st day of December. 1897. It is all for carting during that time. I have charged the prices agreed on between Mr. Kimberly and myself. * * * I have been doing carting for Mr. Kimberly between fourteen and fifteen years, and I was paid in full for all of my services as a cartman up to the 2d day of August, 1897."

In the course of his cross-examination he said:

"My business is general. I do carting for any one who employs me, and during fifteen years I have been doing carting for Mr. Kimberly. I employ men in my business to cart for me. I keep hired men. They do what is called my teaming and carting for me, in my employ. I do not do all the work myself. I pay these men in different ways, by the day, week, and month. I have some men whom I pay in each way. If I have a great deal of work, I hire men by the day. I render my bills to the parties for whom I do work when the work is done. In Mr. Kimberly's case, I was in the habit of rendering a monthly statement to him showing the items of work done."

Kimberly was sworn, and he testified that the claimant—

"Did my carting for my pickle and vinegar works on Fourth street, in Buffalo. The method of doing business with Mr. Lynch was as follows: He charged us 35 cents a load, five barrels constituting a load, to certain points, —the New York Central, the Delaware & Lackawanna, and the Lehigh Valley Depots; and he charged us 40 cents a load to the Lake Shore Depot and outer points. Mr. Lynch would make out his bill the first of every month for the previous month. I would credit his account with whatever it was."

The witness further stated that he saw the teams that came there between August 2, 1897, and December 31, 1897, for merchandise that was hauled, and he added:

"In each case in which I remember, Mr. Lynch was not the driver of the team. I cannot say positively whether he has driven the teams sometimes since the 2d of August, 1897, but I think not. All the hauling for which this claim is made was done between those dates. * * * I did not see Mr. Lynch drive the teams personally. * * * Very often I saw others drive the teams for which some of this claim is made."

In the proof of claim submitted there was a statement of the amount due for labor and services in carting for the months of August, $92.22; September, $116.66; October, $150.63; November, $145.96; and December, $64,—total, $569.47.

By chapter 266 of the Laws of 1897, passed April 15th, the legislature amended section 29 of the act, in relation to assignments, and provided in the closing words of the section, as amended, viz.:

"All sums due to truckmen or cartmen for the payment of freight, and for the carriage of goods, wares and merchandise, shall be deemed and treated as wages for the purposes of this act."

It was provided that that act should take effect immediately.

On the 19th of May, 1897, the same legislature again amended section 29, and provided that it should read as follows:

"In all distribution of assets under all assignments made in pursuance of this act, the wages or salaries actually owing to the employés of the assignor or assignors at the time of the execution of the assignment for services rendered within one year prior to the execution of such assignment, shall be preferred before any other debt; and should the assets of the assignor or assignors not be sufficient to pay in full all the claims preferred, pursuant to this section they shall be applied to the payment of the same pro rata to the amount of each such claim." Chapter 624.

It was provided that that act should take effect immediately.

The effect of the second act was to leave out of section 29 the words relating to truckmen or cartmen; and it is the act of May 19, 1897 (Laws 1897, c. 624), that must be construed in determining whether the claimant here is entitled to a preference. It is to be observed that the act declares that:

"The wages or salaries actually owing to the employés of the assignor or assignors at the time of the execution of the assignment for services rendered within one year prior to the execution of such assignment."

It is to be observed that the proofs do not show that the personal services of the claimant entered into and constituted the foundation for the principal part of the claim which he has made against the assignee; nor does it appear by the proofs that he was exclusively in the service of the assignor. He was carrying on a general business, and

incidentally, by means of teams, transacted business as a carrier for the assignor.

In People v. Remington, 45 Hun, 329 (affirmed 109 N. Y. 631, 16 N. E. 680), at page 338 it was said: "The burden is upon persons claiming preferences to bring themselves, by evidence, within the statute." It was further said in that case that a statute which undertook to provide preferences "is a derogation of the common law, and it should not be extended to cases not within the reason as well as within the words of the statute."

It is contended that the case of People v. Remington, supra, has been qualified to some extent by the case of Palmer v. Van Santvoord, 153 N. Y. 612, 47 N. E. 915. In the latter case, Andrews, C. J., in speaking of the act of 1885, which relates to preferences in cases of receivership, said:

"The act deals with the distribution of the assets of insolvent corporations, or corporations in the hands of receivers. The purpose of the act is that the debts of the corporation for the wages of employés, including in the designation all who, in common understanding, held that relation to the corporation, should be the first charge on the assets, and that business debts should be postponed thereto."

In that case a person was employed by a mowing machine company, at a compensation of $100 per month, to sell or solicit sales of the machines manufactured by the company, and to set up, take down, and repair machines sold; and it was held that he was an employé, and that his claim for wages was entitled to a preference, under the act of 1885. We see nothing in that case which trenches upon the doctrine laid down in People v. Remington, supra; and we are of the opinion that the claimant in this case failed to bring himself within the terms of the statute of 1897, as amended by chapter 624. The foregoing views lead to the conclusion that the judgment appealed from should be reversed, and the claim for a preference rejected.

Judgment reversed, and a new trial ordered before another referee, with costs to the appellant to abide the event. All concur, except WARD, J., not voting.