### GAY et al. v. HUDSON RIVER ELECTRIC POWER CO. et al.

### SAME v. HUDSON RIVER ELECTRIC POWER CO.

(Circuit Court, N. D. New York. March 19, 1910.)

1. CORPORATIONS (§ 566*)—INSOLVENCY AND RECEIVERS—PRIORITIES OF CLAIMS —"WAGES" OF EMPLOYÉS.

Under a statute giving preference in the distribution of the assets of an insolvent corporation to claims for "wages of mechanics, workingmen and laborers," the wages preferred and the class of persons within the statute depend upon the nature and kind of work done, rather than on the social position or professional character and standing of the person rendering the service, and, if the service is such as to bring the person rendering it within the statute, his compensation, whether large or small, or whether payable by the day, week, month, or year, is "wages," within the meaning of the statute, and preferred.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283-2286; Dec. Dig. § 566.*

For other definitions, see Words and Phrases, vol. 8, pp. 7369-7373, 7831.]

2. COURTS (§ 366*)—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.

In the federal courts the decisions of the highest court of a state as to the meaning and construction of the statutes of the state are controlling and binding, when such highest court has spoken on the subject, and, where two decisions of such court conflict, the latest must control.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954-968; Dec. Dig. § 366.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

3. CORPORATIONS (§ 566*)—INSOLVENCY AND RECEIVERS—PRIORITY OF CLAIMS —WAGES OF EMPLOYÉS—"WORKINGMAN"—"LABORER"—"EMPLOYÉ."

Laws N. Y. 1897, c. 415, § 8, provides that, "upon the appointment of a receiver of a partnership or of a corporation organized under the laws of this state and doing business therein, other than a moneyed corporation, the wages of the employés of such partnership or corporation shall be preferred to every other debt or claim." Section 2 defines the word "employé" as used in the act as meaning "a mechanic, workingman or laborer who works for another for hire." Held that, under the construction placed upon a similar prior statute by the Court of Appeals of the state, an attorney at law employed by an electric company to procure options

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on certain property and water power sites which the company desired to buy, at an understood compensation of $10 per day and expenses for the time employed in the service, was not a "workingman" or "laborer," and hence not an "employé" entitled to preference under the statute.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 566.*

For other definitions, see Words and Phrases, vol. 8, p. 7522; vol. 5, pp. 3952–3968; vol. 8, p. 7700; vol. 3, pp. 2369–2377; vol. 8, p. 7649.]

In Equity. Suit by Eben H. Gay and Joseph W. Jackson against the Hudson River Electric Power Company and others. On petition of Calhoun S. Enches for allowance of preferred claim against the receiver of the Hudson River Electric Power Company. Petition denied.

See, also, 173 Fed. 1003.

Jenkins, Kellogg & Barker, for petitioner.
Abram J. Rose and George B. Curtiss, for receivers.
Davies, Stone & Auerbach, for Knickerbocker Trust Co.

RAY, District Judge. The bill of complaint was filed and the receivers appointed the latter part of October and first days of November, 1908. The Hudson River Electric Power Company was organized and incorporated under the general transportation laws of the state of New York and was doing business in the state of New York in generating, transporting, and delivering electrical power and energy and light. For the purpose of enlarging its sphere of action and increasing its water power and electrical plants, it sought to secure options for the purchase of certain lands or water rights in the Sacandaga Valley, N. Y.

This company engaged or employed the petitioner, Calhoun S. Enches, to assist in soliciting and obtaining these options of the various landowners, and he performed services in so doing at various times between February, 1906, and June, 1908, and rendered bills, or some bills, and was paid at the rate of $10 per day and expenses. The services performed at this rate aggregated $5,560, and his expenses were $1,522.66, making $7,082.66. He was paid on account, some bills in full, $5,477.81, leaving $1,604.85 due and unpaid when the receivers were appointed.

It is very clear, and I find, that Mr. Enches was to be paid his expenses and $10 per day for his services. There was no express agreement to that effect; but it is implied from the fact that he was employed, rendered bills or statements, and was paid at that rate without objection.

Mr. Enches is, and then was, an attorney and counselor at law, but he was not employed in his professional capacity and did not work for the company in that capacity, or perform services of the kind or nature usually performed by attorneys and counselors at law. It was no part of his duty to prepare legal papers. The company had two or three other persons employed in the same work who were not attorneys or counselors. Mr. Enches was not employed or hired by the week, month, or year, and was not working for or drawing a salary. In fact, he was working by the day in the work he was doing for the com-

pany. It was not a menial or degrading service, but he did the work to earn money to support himself. He was not a clerk and performed no clerical service; he was not an overseer, or foreman or superintendent; nor was he an officer of the company. He was an "employé," for the reason he was employed by the company to do work for it at an understood daily compensation and he did the work he was employed to do. The work he did with his hands was to figure and make memorandums, and he examined the properties and went from place to place. He, of course, talked and exercised his mental faculties in bargaining for or negotiating options. However, it does not follow that Mr. Enches was an "employé" as defined in the statute referred to, and which is entitled "An act in relation to labor, constituting chapter 32 of the General Laws," approved May 13, 1897, and being chapter 415 of the Laws of New York of 1897.

Section 8 of the act reads as follows:

"Sec. 8. Payment of wages by receivers. Upon the appointment of a receiver of a partnership or of a corporation organized under the laws of this state and doing business therein, other than a moneyed corporation, the wages of the employés of such partnership or corporation shall be preferred to every other debt or claim."

Section 2 of the act defines certain words used in the act, and, so far as material, reads as follows:

"Sec. 2. Definitions. The term, employé, when used in this chapter, means a mechanic, workingman or laborer who works for another for hire.

"The person employing any such mechanic, workingman or laborer, whether the owner, proprietor, agent, superintendent, foreman or other subordinate, is designed in this chapter as an employer."

Enches was not a mechanic. Was he a "workingman or laborer" as generally understood, for so we must construe this statute, that is, within the meaning of this statute? The Century Dictionary defines the word "workingman" as follows:

"A laboring man; one who earns his living by manual labor."

And "workman" as:

"(1) A man who is employed in manual labor, whether skilled or unskilled; a toiler; specifically an artificer, mechanic, or artisan; a handicraftsman. (2) In general, one who works in any department of physical or mental labor; specifically, a worker considered with special reference to his manner of or skill in work—that is, workmanship."

That dictionary defines the word "laborer" as follows:

"One who labors or works with body or mind, or both; specifically, one who is engaged in some toilsome physical occupation; in a more restricted sense one who performs work which requires little skill or special training as distinguished from a skilled workman; in the narrowest sense, such an unskilled workman engaged in labor other than that of a domestic servant, particularly in husbandry."

The act of 1885 (chapter 376), which preceded this, read:

"Where a receiver of a corporation created or organized under the laws of this state and doing business therein * * * shall be appointed, the wages of the employés, operatives and laborers thereof shall be preferred to every other debt or claim against such corporation, and shall be paid by the receiver from the moneys of such corporation which shall first come to his hands."

Here the statute specifically states that "the wages" of a certain class of employés shall be preferred.

This section (section 1, c. 376, Laws 1885) was under consideration by the Court of Appeals of the state of New York, its highest court, in Matter of Stryker, 158 N. Y. 526, 53 N. E. 525, 70 Am. St. Rep. 489, and the court held that the general and comprehensive word "employés" must be limited by the more specific words "operatives and laborers," and that the statute was intended to limit the preference to the particular class whose claims would be properly expressed ·by the word "wages" as commonly applied to the payment for manual labor, or · other labor of menial or mechanical kind as distinguished from salary and from fee, which denote compensation paid to professional men. Also, that the word "wages" in that statute, in its application to laborers and employés, conveys the idea of subordinate occupation, which is not very remunerative; and the statute was not designed to give a preference to the salaries and compensation due to officers and employés occupying positions of trust or profit. So it · was held by that court, in 1899, that a clerk and bookkeeper of a manufacturing corporation, and the superintendent, shop foreman, and a draftsman, who had been employed at salaries ranging from $100 to $225 a month, were not entitled to a preference under that act. As to the word "wages," the court said:

"The most important word in the statute is the word 'wages.' It was wages that the Legislature intended to prefer in the distribution of the assets of the insolvent corporation, not salaries, nor earnings, nor compensation. It was not intended to prefer the claims of all employés, but it was manifestly intended to limit the preference to the particular class whose claims would be properly expressed by the use of the word wages. This word is applied in common parlance specifically to the payment made for manual labor, or other labor of menial or mechanical kind, as distinguished from salary and from fee, which denotes compensation paid to professional men. Century Dictionary. In its application to laborers and employés it conveys the idea of subordinate occupation which is not very remunerative, of not much independent responsibility, but rather subject to immediate supervision."

There the words were "employés, operatives, and laborers," while here the word is "employés," meaning "mechanic, workingman, or laborer." There, as here, it was "wages" that are to be preferred and paid. Enches did not work by the week, month, or year; neither did he work on or receive a salary. He was better paid than were the clerk, bookkeeper, superintendent, and draftsman in the Stryker Case. However, I do not agree with the argument that a large compensation is not "wages," or that the amount earned and paid has anything to do with determining whether or not a person is paid "wages" for his work performed. What the Century Dictionary actually says is:

"(1) A gage; a pledge, a stake. * * *

"(2) That which is paid for a service rendered; what is paid for labor; hire; now usually in the plural. Sometimes the plural form is used as a singular. In common use the word wages is applied specifically to the payment made for manual labor or other labor of a menial or mechanical kind; distinguished (but somewhat vaguely) from salary (which see), and from fee, which denotes compensation paid to professional men, as lawyers and physicians."

This means that "wages" are what is paid for services rendered, even if both physical and mental, as distinguished from a fixed salary, and as distinguished from compensation paid in the professional employments for professional work.

In the statute under consideration the section is to be construed as though it read "the wages of the mechanics, workingmen or laborers in the employment of such partnership or corporation shall be preferred to every other debt or claim." Was Enches a "workingman" or "laborer" within the meaning of the statute? He worked and he labored in a sense. There are many decisions of the courts bearing on the subject, but they are by no means uniform or conclusive. "Wages, a compensation given to a hired person for his or her service." 2 Bouvier's Law Dic. 648. This definition does not suggest menial employment or manual labor alone. Wages is the compensation paid or to be paid by the day, week, month, or year, for the services of laborers or other subordinate or menial employés. Cowdin v. Huff, 10 Ind. 83; Adcock v. Smith, 97 Tenn. 373, 37 S. W. 91, 56 Am. St. Rep. 810. In ordinary language the term "wages" is usually employed to designate the sum paid to persons hired to do manual labor. State v. Haun, 7 Kan. App. 509, 54 Pac. 130. Wages is the reward agreed to be paid by the master to the servant or person whom he hires to do business for him. Moore v. Heaney, 14 Md. 558. In this case there is no suggestion of manual labor alone. The case agrees with the definition in Bouvier. In Palmer v. Van Santvoord, 153 N. Y. 612, 47 N. E. 915, 38 L. R. A. 402, the court, in considering chapter 376, Laws N. Y. 1885, said:

"The case of bookkeepers or persons employed to make sales of merchandise, or of property manufactured by the corporation, are, we think, 'employés,' within the meaning of the act, and their compensation earned is 'wages,' whether such persons are employed by the day, or month, or year, and whether the compensation is denominated 'salary' or 'wages' in the contract of employment."

The court, in that case (1897), devoted the most of its consideration to the meaning of the words "employés, operatives and laborers" as used in the statute. There the claimant was employed by a mowing machine company at a compensation of $100 per month to sell or solicit sales of the machines made by it, and to set up, take down, and repair the machines sold. The services performed by him were of a mixed character, partly those of a sales agent and partly those of a mechanic. This was the same statute considered in 1899 by the same court, differently constituted, however, in part, in Matter of Stryker, 158 N. Y. 526, 53 N. E. 525, 70 Am. St. Rep. 489, supra. In 1897 the court was composed of Andrews, C. J., and O'Brien, Haight, Martin, Vann, Bartlett, and Gray, JJ. Bartlett dissented, and Gray was absent. In 1899 the court was composed of Parker, C. J., and Gray, O'Brien, Bartlett, Haight, Martin, and Vann, JJ. O'Brien, J., who concurred in the opinion of Andrews, C. J., in Palmer v. Van Santvoord, supra, wrote the opinion in Matter of Stryker, supra, but did not refer to the former case. He did cite People v. Remington, 45 Hun, 338, affirmed 109 N. Y. 631, 16 N. E. 680. In the Stryker Case, Gray, J., concurred in a memorandum, as did Haight, J., as to

'all but the bookkeeper and draftsman; he voting for a reversal as to them on the authority of Palmer v. Van Santvoord, supra. Judge Gray said:

"The reasoning in Palmer v. Van Santvoord, 153 N. Y. 612 [47 N. E. 915, 38 L. R. A. 402], in my opinion, embarrasses not a little the decision of this case."

And, after referring to People v. Remington, supra, said:

"If the opinion (that of Judge Andrews in the Van Santvoord Case) is followed, it might compel a reversal of this judgment."

Turning again to the opinion of the court in Matter of Stryker, supra, we find it saying:

"It was said in that case that the statute was designed to secure the prompt payment of the wages of persons who, as a class, are dependent upon their earnings for the support of themselves and their families, and it was not designed to give a preference to the salaries and compensation due to officers and employés of a corporation occupying superior positions of trust or profit. I cannot doubt that this is a correct interpretation of the statute which conforms to the purpose which the Legislature evidently had in view in its enactment. In order to give the preference provided by the statute, the claim must be for 'wages' in the ordinary sense of that term. It was not, we think, the purpose of the statute to secure a preference for claims due to the clerical force engaged in transacting the business, nor to the superintendent, foremen, or officers of the corporation who are compensated by a fixed yearly salary. Although the word 'employés' is used, yet the purpose of the statute was to protect mechanics, operatives, or laborers from loss of their wages in the event of the insolvency of the corporation. It is significant to note that insurance and moneyed corporations are excepted from the operation of the statute. There was no reason for excepting these corporations but for the fact, well known, that they do not employ labor, in the ordinary sense of that word. The conduct of the business of these corporations requires a large clerical force, graded and organized according to the extent and necessities of the business. If it was intended to protect the claims of this class of employés, there was no reason why all corporations should not be included within the scope of the statute. But it evidently was not. It was supposed that that class of employés could protect themselves; whereas, the common laborer, operative, or mechanic would be left by the failure of the business in a much more helpless condition. The wages of laborers, mechanics, and domestic servants has in modern times become the subject of protective legislation in this and many other countries, and whenever the law has been extended beyond these classes, so as to include the claims of parties performing clerical duties or work of a like character, it was by judicial construction based upon language much broader than is to be found in the enactment in question."

I am at a loss to understand how clerks selling goods behind a counter are in a better position or better able "to protect themselves" than the workingman who carts and delivers the goods. Or in a machine factory I am not able to comprehend that a sales agent who sells, and sets up and takes down and repairs the machines he sells, is less able to protect himself than the clerk who keeps books or the foreman in the shop. A draftsman uses his hands and his body as well as his mental faculties.

In Gurney v. Atlantic, etc., R. R. Co., 58 N. Y. 358, "debts owing to laborers and employés" were preferred, and the court held the language broad and comprehensive enough to include a debt due Hon. J. S. Black for professional services as an attorney. This case is commented on by the Supreme Court of the United States in Vane v. Newcombe, 132 U. S. 220, at page 237, 10 Sup. Ct. 60, 33 L. Ed.

310, and again in Louisville v. Railroad Company, 138 U. S. 501, 505, 11 Sup. Ct. 405, 34 L. Ed. 1023. These cases, however, throw little, if any, light on the question now being considered. I am of the opinion that the "wages" preferred and the class of persons who come within the terms of the statute depend on the nature and kind of work done by the employé, rather than on the social position or professional character and standing of the one rendering them.

If Enches, being an attorney and counselor at law, had gone into the plant of this company and shoveled coal at $2 per day, or $12 per week, or at $650, per year, he would have been a laborer, and his compensation would be preferred under this statute as "wages." So, if a minister of the gospel, preaching on Sundays at a fixed salary for a church, should pick up old iron and dig ditches for a corporation during the rest of the week at a fixed and agreed yearly compensation of $375 for such services, such agreed compensation would be "wages" and preferred as such under the statute in question. If the person who does the work is a mechanic and the work done is mechanical labor, or is a workingman and the work done is such as a workingman usually does for the corporation in question, or is a laborer and the work done is such as laborers in the employ of the corporation usually perform, it matters not that his pay or compensation is large or small, by the day, the week, or the year; such compensation is "wages" within the meaning of this statute and preferred. And it would make no difference that such person is in fact a physician, a lawyer, or a minister of the gospel, so long as he was not employed in his professional capacity and did not perform the services in his professional capacity. The law, in such case, would regard him as a mechanic, a workingman, or a laborer, as the case might be. So here the question is, not what was Mr. Enches' profession, or what was his standing in his profession, but what did he do? Did he do the work of "a workingman" or that of "a laborer," as we commonly or usually understand the meaning of those words. We say of our Governor or of our President, "he is a great worker"; but we do not mean that he is either a "workingman" or a "laborer." We say of them, "they labor constantly with fidelity and great ability"; but we do not mean either of them is a "laborer," in the sense of our labor laws and statutes. The work done and services performed by Mr. Enches were special and unusual so far as the corporation, his employer, was concerned. He was not a regular employé, and the work done was not in the line for which it was organized or incorporated. The work done and services performed were not of a kind or class such as workingmen or laborers, as we commonly understand the meaning of the words "workingman" and "laborer," usually perform. The services performed cannot, properly, be classified as manual labor. They were not of a professional character, strictly speaking, but rather quasi professional. I do not see that I can give any different meaning or construction to the statute of 1897 than was given to that of 1884, by the Court of Appeals, so far as this case is concerned.

In the federal courts the decisions of the highest court of a state as to the meaning and construction of the statutes of the state are controlling and binding when such highest court has spoken on the sub-

ject. Clarke v. Clarke, 178 U. S. 186, 20 Sup. Ct. 873, 44 L. Ed. 1028; Concord v. Portsmouth Sav. Bank, 92 U. S. 628, 23 L. Ed. 628; Hartford F. Ins. Co. v. Chicago, M. & St. Paul R. Co., 175 U. S. 91, 20 Sup. Ct. 33, 44 L. Ed. 84; Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359; Anderson v. Santa Anna, 116 U. S. 356, 6 Sup. Ct. 413, 29 L. Ed. 633; Warburton v. White, 176 U. S. 484, 20 Sup. Ct. 404, 4 L. Ed. 555; Bacon v. N. M. Life Ins. Co., 131 U. S. 258, 9 Sup. Ct. 787, 33 L. Ed. 128; Wilson v. North Carolina ex rel., 169 U. S. 586, 18 Sup. Ct. 435, 42 L. Ed. 865.

Where, as here, there is a conflict of opinion in the highest court of the state, it is respected all the same, and, where two decisions conflict, the latest must control.

No principle of the federal Constitution or of any federal law or of general commercial law is involved here, and this court is bound to follow the latest decision of the Court of Appeals on the subject. True, in the decision referred to (Matter of Stryker, 158 N. Y. 526, 53 N. E. 525, 70 Am. St. Rep. 489, this particular statute was not under consideration; but it is, in effect, an amendment of that statute without substantial change so far as the question involved here is concerned. It is cited with approval in Dolge v. Dolge, 70 App. Div. 517, 522, 75 N. Y. Supp. 386; Hopkins v. Cromwell, 89 App. Div. 481, 85 N. Y. Supp. 839, cites the case; but that case arose under a statute preferring "the wages or salaries owing to the employés of the assignor," etc. There the word "employés" was not accompanied by any qualifying word, or words, and "salaries" and "wages" are both included.

In the case just referred to, Hopkins, authorized by the corporation, solicited and contracted for pickles with the farmers in his vicinity, and then sorted, brined, and packed them and shipped to purchasers when ordered to do so. His compensation was 20 cents per 100 pounds for the pickles so purchased by him. Clearly he was an employé, and, clearly, he was paid for his services or work, and whether his compensation was measured by the day's work or by the amount of work done, or by the weight of the pickles handled, is immaterial. Such compensation was "wages."

In Matter of Kimberly, 37 App. Div. 106, 55 N. Y. Supp. 1024, under the same statute, one Lynch, claimant, did a general carting business and employed men and kept teams. When called upon he carted for the assignor, Kimberly, who owed him for carting when the assignment was made. The claimant's work for Kimberly was incidental to his general carting business. The Appellate Division held that he was not within the statute. So here the same objection may be urged, as Enches was not regularly employed.

However, I do not place my decision on that ground, as I think the statute now under consideration would include a cartman who had done carting business for the corporation when called upon. He would be not only an "employé," but a "workingman" and a "laborer," if he did any of the work himself.

The burden is on Mr. Enches to show that he was a workingman or laborer in doing the work he did, and for which the claim is made, and within the statute. People v. Remington, 45 Hun, 329, 338, affirmed 109 N. Y. 631, 16 N. E. 680. It was there said:

"The burden is upon persons claiming preferences to bring themselves, by evidence, within the statute."

Also, held that such a statute "is a derogation of the common law, and it should not be extended to cases not within the reason, as well as within the words of the statute." I think the Stryker Case repudiates the case of Palmer v. Van Santvoord. The decisions are at war with each other and cannot be reconciled.

It is because of this later decision in the Van Santvoord Case, and that alone, that I feel compelled to hold that Mr. Enches is not entitled to the preference claimed, and his claim to a preference is disallowed. The fees and expenses of the special master, allowed at $91.36, will be paid by the receivers, and the order will so provide.