# BACON *v.* NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MICHIGAN.

No. 173. Argued and submitted January 23, 1889. — Decided May 13, 1889.

If a mortgage of real estate in Michigan containing a power of sale is duly recorded, as provided by law, it is not necessary that the bond secured by it and that an agreement referred to in it and adopted and made a part of it should also be recorded, in order that a foreclosure may be had by advertisement and sale in the manner provided by the statutes of the State.

Where a mortgage debt is payable in instalments, a provision in the mortgage that if at the expiration of the time limited for the payment of all there shall remain due on the mortgage a sum not greater than a sum named, which is less than the amount of the whole mortgage debt, the mortgagor may have the privilege of paying the amount due by giving his note therefor secured by mortgage on other real estate, does not suspend the power of foreclosure and sale for non-payment of instalments as they become due.

This court concurs with the Supreme Court of the State of Michigan in holding that the misspelling of the name of the mortgagee in an advertisement for the foreclosure of the mortgage by public sale under a power of sale in the mortgage in the manner required by the statutes of the State, and other errors in that advertisement which worked no prejudice to the mortgagor — as a reference in the advertisement to the record pointed out to all persons interested the means of obtaining true information and of correcting all mistakes — were not defects sufficient to defeat a title acquired at that sale.

EJECTMENT. Plea, the general issue. Judgment for the plaintiff. Defendant sued out this writ of error. The case is stated in the opinion.

*Mr. Edward Bacon,* for plaintiffs in error, submitted on his brief.

*Mr. John E. More* for defendant in error.

MR. JUSTICE LAMAR delivered the opinion of the court.

This is a suit in ejectment, brought in the court below by the defendant in error, a Wisconsin corporation authorized by the laws of that State to purchase and hold real estate, against the plaintiffs in error, citizens of Michigan, to recover possession of certain real estate in the city of Niles, in the last named State, together with damages for its retention.

The defendants pleaded the general issue. The case was tried by the court without the intervention of the jury, which, by the written request of counsel for defendants, made a special finding of facts in accordance with §§ 649, 700, of the Revised Statutes of the United States, and, upon such findings, rendered judgment in favor of the plaintiff. This writ of error is brought to review that judgment.

The findings of the court are substantially as follows. At the commencement of this suit, the premises in controversy were valued at from $12,000 to $25,000, and were in the possession of the defendants, Lydia A. Bacon claiming title in fee-simple, and the other defendants claiming under her as tenants or otherwise. Solyman Waterman is the common source of title to both the plaintiff and the defendant, Lydia A. Bacon. On the 8th of May, 1849, Waterman, then owning the fee to this property and the right of possession, gave a purchase-money mortgage to one Anna H. Dickson, to secure the payment of $1400, payable in five equal annual instalments on the 29th of November, with interest quarterly, each year. He failed to make the payments specified, the mortgage was foreclosed, and, upon such foreclosure, the premises were bid off by the mortgagee for $684.80. The time for redemption having expired without any one redeeming, the sheriff of the county made and executed a deed to her for the property, which was duly recorded, and she entered into actual possession thereof as such purchaser, claiming title April 1, 1855. Anna H. Dickson afterwards conveyed the premises to one Crofoot, and he, on the 20th of September, 1867, conveyed them to Edgar Reading, who entered and continued in the actual possession thereof until 1876.

On the 19th of June, 1874, Reading executed a mortgage of this property to the plaintiff to secure the payment of

$   , which was afterwards duly foreclosed for failure to comply with its terms, and the property was bid in by the plaintiff. The sale was duly confirmed and the master made and executed a deed therefor to the plaintiff on the 28th of October, 1879.

There is no controversy concerning the proceedings in equity to foreclose the Reading mortgage, nor as to the sale and conveyance of the property under the decree in that case. The contention relates to the prior foreclosure under the Waterman mortgage.

Waterman's mortgage to Anna H. Dickson, the foreclosure proceedings as to which are claimed by defendants to have been illegal and invalid, contained the usual power of sale upon default of any part of the sum thereby secured to be paid; and, at the time of the foreclosure thereof, there was due and unpaid thereon $664.50, and no proceeding at law had been commenced to recover any part of the debt.

The statutes of Michigan provide that "every mortgage of real estate containing therein a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement in the cases and in the manner hereinafter specified." It then specifies, among other things, that the mortgage must have been recorded, and that a notice that the same will be foreclosed by a sale of the mortgaged premises shall be given by publishing it for twelve successive weeks, at least once in each week, in a newspaper printed in the county where the premises are situated, which notice shall specify: (1) The names of the mortgagor and mortgagee; (2) the date of the mortgage and when recorded; (3) the amount claimed to be due thereon at the date of the notice; and (4) a description of the mortgaged premises. 2 Compiled Laws of 1871, §§ 6912, 6913, 6914 and 6915.

December 18, 1852, Anna H. Dickson caused notice that the mortgage from Solyman Waterman to her would be foreclosed, by a sale of the mortgaged premises, describing them, to be published in the *Niles Republican*, a newspaper published in the county where the premises are situated. The day of sale fixed in the notice was March 15, 1853. That notice, as printed,

is dated " Dec. 28, 1852," ten days subsequent to the date of the first publication thereof. It describes the mortgage as having been given " by Solyman Waterman to Anna H. Dixon, both of the village of Niles, in the State of Michigan," and " dated the eighth day of May, 1848," whereas the real date of the mortgage is 1849 and the real name of the mortgagee is " Dickson." Again, as then published, the notice is signed " Anna H. Dixon, mortgagee." With such mistakes, it was published once in each week for three successive weeks; then " Dixon " was changed to " Dickson " where the name is appended to it. With no other change.it was published the fourth, fifth and sixth weeks. The seventh publication was made January 29, 1853, when the name appended to it read " Dickens." It was then published weekly till February 12, 1853, on which day's publication the final letter " e " in the word "mortgagee," appended to the signature, disappeared. No other changes occurred. It was then published, for and including the remainder of the period of twelve successive weeks, once in each week in said newspaper.

The notice stated correctly the day when, and the book in which, the mortgage was recorded, and also the sum due thereon. The sale took place at the time specified in the notice. The mortgage had been duly recorded prior to the commencement of the foreclosure proceedings; but neither an agreement referred to in the body of the mortgage as having been made between the parties thereto on the 29th of November, 1848, adopted and made a part of it, nor the bond mentioned therein had been recorded. There is a stipulation in the mortgage giving the mortgagor a right to pay any sum not exceeding $1000 of the $1400 thereby secured, at any time before the last instalment should become due, by a bond and mortgage well securing such sum on other real estate in the village of Niles.

August 25, 1868, Waterman commenced an ejectment suit in the Circuit Court of Berrien County, Michigan, against Reading to recover possession of the premises, to which suit Reading appeared and pleaded the general issue. That suit was once tried in 1880, resulting in a judgment in favor of

Waterman, but on error the Supreme Court of the State reversed that judgment, and remanded the cause for a new trial (46 Michigan, 107); and the same was pending and undetermined in the Circuit Court of Berrien County at the time this suit was commenced. On the 16th of October, 1880, Waterman, for the consideration of $300, conveyed to the defendant, Lydia A. Bacon, all his right and title to the premises in dispute. Under that deed she claims title herein.

The assignments of error may all be reduced to one proposition, viz. : The findings of the court upon the facts in the case do not support the judgment.

To support the judgment it is only necessary that the findings should show possession by the defendants, and title and right of possession in the plaintiff. There is no question but that they show that the defendants were in possession of the premises at the time the suit was commenced. There is no privity between the parties to the suit, and the only question for consideration, therefore, relates to the title the plaintiff has to the property. It is insisted by the plaintiffs in error that that title is invalid, because the foreclosure proceedings in the matter of the Waterman mortgage were not in accordance with law, and were fatally defective in at least three particulars, viz. :

(1) The mortgage was not "duly recorded" so as to warrant a foreclosure by advertisement under the power of sale, for the reason that the agreement of November 29, 1848, which is referred to and in all its terms and conditions adopted and made part of the mortgage, was not recorded.

(2) The power of sale contained in the mortgage was not operative between December 1, 1852, and April 1, 1853.

(3) The notice under which the sale was made was irregular, defective and illegal.

The first of these propositions cannot be sustained. The registry statutes of Michigan provide that " every conveyance of real estate within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate or any portion

thereof, whose conveyance shall be first duly recorded." Howell's Stat. Mich. § 5683.   Sections 5674 to 5677, inclusive, prescribe the manner in which such recording should be done.

The object of recording the mortgage is to give notice to third persons.  The rule is well-nigh universal in the United States that, as between the parties thereto, the mortgage is just as effectual for all purposes without recording as it is with it.   Jones on Mortgages, § 467.   That is the rule in Michigan. *Sloan* v. *Holcomb*, 29 Michigan, 153.

The condition in the mortgage which, it is claimed, prevented the power of sale from being operative at the time the sale was made, when read in connection with the rest of the instrument, means simply this : That if, at the expiration of the time limited for the payment of the five instalments and the interest thereon, the mortgagee had not foreclosed for the accrued instalments, and there should still remain due on the mortgage a sum not greater than $1000, the mortgagor might have the privilege of paying the amount due by giving his note therefor, secured by mortgage on other real estate in the city of Niles.   That privilege, however, did not prevent the instalments from falling due at the times stipulated, nor prevent a sale of the property, under the other terms of the mortgage, to satisfy them when they fell due.   True, the mortgagor might have stopped the sale by insisting on the terms of the stipulation in the mortgage and complying with the obligations resting on him.   It was his privilege to have done so.   But that privilege could have been waived, and the rights held under that stipulation lost by failure to assert them.

Even granting that the mortgagor had the right of insisting on the terms of the stipulation at any time before the date fixed for the fifth instalment to become due, notwithstanding the sale before that time, it is not apparent how any one but the purchaser at the sale could be heard to complain, since no one else could be injured.   For, under those circumstances, the sale which purported to be absolute, with only the right to redeem within the statutory period attaching thereto, would have a still further condition limiting it, viz.: Be subject to annulment and rescission at any time before the expiration of

the period mentioned in the stipulation. But the proposition which we have assumed does not arise here, for the mortgagor in this case did nothing. He neither paid nor offered to pay the instalments as they came due, in cash, nor did he pay or offer to pay them by giving his note secured by mortgage on other real estate in the city of Niles, at any time before the sale of the property, or at any time thereafter. But, on the contrary, he stood by and allowed the property to be sold, saw the sheriff's deed executed for it, and never attempted to redeem. Afterwards, the purchaser at the sale, who, it happens, was the original mortgagee, took possession of it. It is not until 13 years after that event, when the property has increased in value many fold by improvements thereon and the natural rise in the value of real estate attendant upon the growth of the city, that he seeks to regain possession of the property by bringing a suit in ejectment.

It would be going too far to hold that, after all these laches, he or his assigns can defeat the title acquired at the mortgage sale and transmitted to the plaintiff, by setting up any supposed irregularity in the foreclosure proceedings. The time to have asserted any rights that he possessed under and by virtue of the stipulation incorporated in the mortgage was limited by the terms of that instrument. And, by failing to assert them within that time, allowing the sale to go on, and that time to elapse, he and his assigns should be estopped from setting up any claim to the property in question.

With reference to the third reason assigned for the illegality of the foreclosure proceedings, we do not think much need be said. The Supreme Court of Michigan in *Reading* v. *Waterman*, 46 Michigan, 107, in passing upon this identical question held, that, so far as the notice of sale and the sale itself was concerned, there were no defects sufficient to defeat the title acquired at that sale. As the question involved the legality of proceedings provided for by the statutes of the State, and is thus a question of the construction of a state statute by the highest court of the State, or, more properly, perhaps, a rule of property in that State, we would follow the ruling of the Michigan Supreme Court upon it even though we might have

some doubts upon it as an original proposition. *Sumner* v. *Hicks*, 2 Black, 532; *South Ottawa* v. *Perkins*, 94 U. S. 260; *Brine* v. *Insurance Co.*, 96 U. S.. 627; *Connecticut Insurance Co.* v. *Cushman*, 108 U. S. 51; *Equator Co.* v. *Hall*, 106 U. S. 86. But in our opinion that question was properly decided by that court.

Say the court in its opinion in the case referred. to :

"The error in the indorsement cures itself by reference to the deed itself, from which the time of redemption could be determined at once. *Johnstone* v. *Scott*, 11 Michigan, 232. Such a mistake was there held unimportant. The blunders which appear to have got into the notice of sale indicate very careless printing, and the changes in the different issues are not easily explained; but how far they can be allowed to defeat the sale depends on the effect they were likely to have on persons interested. Authorities are cited and arguments made on this matter which relate to proceedings which are had of a hostile character and *ex parte*, where it is commonly held that such action, contrary to the usual course of law and against persons who have not the common-law benefit of self-protection, should be held invalid unless conforming strictly to statutory authority. We held in *Lee* v. *Clary*, 38 Michigan, 223, that statutory foreclosures did not come in all respects within the same mischief. The statutes regulating them are made to enlarge, and not to cut down, the rights of mortgagors. Before such statutes were passed, sales made under a power of sale contained in the mortgage were governed by the same rules applicable to the sales under any other power, and courts, in the absence of statutes, have never applied to such powers any such technical rules as would impair the security of purchasers. The power is part of the contract, and should be construed on principles applicable to contracts and not as a hostile process.

"The statutes were intended to prevent surprise or unfairness, and they should be enforced in everything substantial. Courts cannot disregard any of their positive provisions. But, on the other hand, those provisions cannot be enlarged or unreasonably construed, so as to render mortgage sales unsafe,

or to make bidding hazardous. The law was designed to encourage and not to destroy recourse to these simple and cheap remedies; and while no substantial right should be disregarded, substantial regularity is all that should be held imperative.

"The only things absolutely required in the notice of sale are the names of the parties original or by assignment, the date of the mortgage, and of its record, the amount claimed to be due, and a description *substantially* agreeing with that in the mortgage. In the present case the body of the notice contained the name of the mortgagor, but the mortgagee was named therein 'Dixon,' and not 'Dickson.' These names, however, are the same in sound and legally identical unless shown to refer to two different persons. Here the name of Mrs. Dixon was referred to as mortgagee, and the mortgage itself removed any such possibility of error. The name signed to the notice was shifted by some accident to the types, but as the notice showed the foreclosure was on behalf of the original mortgagee, no harm could come from such a manifest slip, which could mislead no one. The notice was first published December 18th, but was dated December 28th. This was also of no account, as the error was palpable. The day of sale was properly given and the publication full. The notice gave the date of the mortgage once correctly and once incorrectly. The date and place of record and the volume and page were also given accurately. It was manifest on the face of the notice that one of these dates was wrong, and the means of correction were given by the record. It is indeed suggested that the date given correctly as 1849 refers to the bond, and not to the mortgage, which is mentioned as of 1848, the days of the month corresponding. This does not strike us forcibly, for it would not be likely that a mortgage given one year would refer to a bond not made until a year after. It is not to be supposed that purchasers under foreclosure sales look at the dates of instruments without consulting the records to ascertain the state of the title. The information given by this notice directed every one immediately to the record, and that necessarily explained the true date of the two dates set

out in the notice itself. We cannot imagine that any one could be deceived by the imperfection."

The reasoning of the Michigan Supreme Court, in our opinion, is sound, and its conclusion correct.

There are no other features of the case that call for extended discussion or even special mention.

Upon the whole case, we think the judgment of the court below was correct, and it is, accordingly, *Affirmed.*