NEW YORK CENT. & H. R. R. CO. v. PRICE.

(Circuit Court of Appeals, First Circuit. January 15, 1908.)

No. 651.

1. COURTS—RULES OF DECISION—"DICTUM."
    Whenever a question fairly arises in the course of a trial, and there is a distinct decision thereon, the court's ruling in respect thereto can in no sense be regarded as mere "dictum."
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 335.
    For other definitions, see Words and Phrases, vol. 3, pp. 2051, 2052.
    Dicta of courts, see note to Union Pac. R. Co. v. Mason City & Ft. D. R. Co., 64 C. C. A. 361.]

2. RAILROADS—FENCES—STATE STATUTES—CONSTRUCTION.
    Rev. Laws Mass. c. 111, § 120, requires railroads to erect and maintain suitable fences on both sides of the entire length of the railroad except at crossings of a public way or any places where the convenient use of the road would be thereby obstructed, that the corporation shall also construct and maintain sufficient barriers where it is necessary and practicable to do so to prevent the entrance of cattle on the road, and in case of its neglect shall forfeit not more than $200 for every month during which the neglect continues, and that the Supreme Judicial Court shall have jurisdiction in equity to compel the corporation to comply with the provisions, and to prohibit the crossing of highways, or the use of any land until the provisions are complied with. Held that, since the construction of such section is a local question, a federal court sitting in Massachusetts would accept the construction placed thereon by the Supreme Judicial Court of the state that the duty imposed exists only in favor of adjoining owners and occupants, and therefore imposed no liability for failure to fence against children who might be playing near the right of way, and thoughtlessly run on the tracks and be injured.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 956, 957.]

3. SAME—DUTY TO EXCLUDE TRESPASSERS—CHILDREN—FENCES.
    Where a child ran quickly on defendant's railroad track, and was struck and killed without negligence on the part of the railroad company in the operation of the train, the railroad was not negligent in failing to

fence its track to keep the child off its premises and prevent it from becoming a trespasser, there being no duty, in the absence of statute, on the part of the railroad company to build a fence or erect barriers at places other than crossings to exclude persons, whether children or adults, from its tracks.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1246.]

4. SAME—STATUTES—NATURE AND EFFECT.

Statutes requiring railroads to fence their tracks are not declaratory of an existing and recognized legal duty, but impose new and further duties essential or important to the safety of the public, the security of passengers and employés, or the protection of the property of adjoining owners, such legislation being justified as an exercise of the state's police power.

Aldrich, District Judge, dissenting.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 762.]

In Error to the Circuit Court of the United States for the District of Massachusetts.

George L. Mayberry and George P. Furber, for plaintiff in error.

Grenville S. MacFarland (John P. Feeney, on the brief), for defendant in error.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge. This is a writ of error brought by the railroad company to review the rulings of the Circuit Court in an action of tort. The plaintiff's intestate, a boy 6½ years old, was playing upon an open lot in East Boston. The lot adjoined the defendant's railroad and was unfenced. The boy struck a plaything so that it fell on or near the track, and ran after it upon the defendant's land, where he was struck by a freight train, receiving injuries from which, after conscious suffering, he died in four or five hours. The declaration charged:

"That the defendant negligently failed to maintain a suitable fence along its tracks as required by the laws of Massachusetts. That said railroad tracks at said place ran at grade by a lot of land where were situated the homes of many young children, and where the children were accustomed to play. That the said tracks were in other respects so situated with regard to said land on which children were accustomed to play that the defendant knew, or ought to have known, that they were a source of peculiar danger and inducement to young children in the absence of such a fence as was required by law."

The Massachusetts statute relating to the fencing of railroads is found in Revised Laws of Massachusetts, c. 111, § 120:

"Every railroad corporation shall erect and maintain suitable fences, with convenient bars, gates or openings therein, upon both sides of the entire length of its railroad, except at the crossings of a public way or in places where the convenient use of the road would be thereby obstructed, and except at places where, and so long as, it is specially exempted from the duty of so doing by the board. Such an exemption granted prior to the first day of August in the year eighteen hundred and eighty-two shall not be revoked except upon new proceedings had under the provisions of this section, notice of which shall be given to the corporation interested, and published once in each of three successive weeks in a newspaper published in each county in which the land is situated. The corporation shall also construct and maintain sufficient barriers, where it is necessary and practicable so to do, to prevent the entrance of cattle upon the road. A corporation which unrea-

sonably neglects to comply with the provisions of this and the following section shall, for every such neglect, forfeit not more than two hundred dollars for every month during which the neglect continues; and the Supreme Judicial Court shall have jurisdiction in equity to compel the corporation to comply with such provisions, and, upon such neglect, to restrain and prohibit it from crossing a highway or town way, or from using any land, until such provisions shall have been complied with."

The railroad company, now plaintiff in error, contends that this statute imposed upon the railroad company no duty to the plaintiff's intestate, and that such duty as is imposed upon the railroad company exists only in favor of adjoining owners and occupants. It relies upon Byrnes v. Boston & Maine Railroad, 181 Mass. 322, 324, 63 N. E. 897, 898, in which it was said:

"But the omission to fence does not render a railroad liable except as against adjoining owners; and if a horse escapes from the highway on to an unfenced lot, and thence to the railroad where it is injured, the owner cannot recover unless there was reckless or wanton misconduct on the part of those in charge of the train." Maynard v. Boston & Maine Railroad, 115 Mass. 458, 15 Am. Rep. 119; McDonnell v. Pittsfield & North Adams Railroad, 115 Mass. 564; Darling v. Boston & Albany Railroad Company, 121 Mass. 118.

It was also said:

"The object of the statute is expressed to be to 'prevent the entrance of cattle upon the road,' and cases that have arisen under it are all cases of this kind."

The plaintiff in error also cites Morrissey v. Eastern Railroad Company, 126 Mass. 377, 30 Am. Rep. 686; Sullivan v. Boston & Albany Railroad Company, 156 Mass. 378, 31 N. E. 128; Gay v. Essex Electric Street Railway Company, 159 Mass. 238, 34 N. E. 186, 21 L. R. A. 448, 38 Am. St. Rep. 415; Daniels v. New York & New England Railroad Company, 154 Mass. 349, 28 N. E. 283, 13 L. R. A. 248, 26 Am. St. Rep. 253; Dalin v. Worcester Consolidated Street Railway Company, 188 Mass. 344, 74 N. E. 597.

We cannot escape the force of the case of Byrnes v. Boston & Maine Railroad, 181 Mass. 322, 63 N. E. 897, by disregarding as dictum the expression "the omission to fence does not render a railroad company liable except as against adjoining owners." Assuming that the facts were such that no obligation to fence existed under the terms of the Massachusetts statute, and that the case so held, nevertheless, as an additional reason for its decision, the court construed the statute, and held that the obligations imposed by it were solely in favor of adjoining owners.

Decisions of the Supreme Court declare the rule:

"Whenever a question fairly arises in the course of a trial, and there is a distinct decision of that question, the ruling of the court in respect thereto can, in no just sense, be called mere dictum." Union Pacific Company v. Mason City Company, 199 U. S. 160, 166, 26 Sup. Ct. 19, 50 L. Ed. 134; Railroad Companies v. Schutte, 103 U. S. 118, 26 L. Ed. 327.

In Smiley v. Kansas, 196 U. S. 447, 455, 25 Sup. Ct. 289, 290, 49 L. Ed. 546, it was said:

"It is well settled that in cases of this kind the interpretation placed by the highest court of the state upon its statutes is conclusive here. We ac-

cept the construction given to a state statute by that court. St. Louis, Iron Mountain & St. Paul Railway Company v. Paul, 173 U. S. 404, 408, 19 Sup. Ct. 419, 43 L. Ed. 746: Missouri, Kansas & Texas Railway Company v. McCann. 174 U. S. 580, 586, 19 Sup. Ct. 755, 43 L. Ed. 1093; Tullis v. Lake Erie & Western Railroad Company, 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192. Nor is it material that the state court ascertains the meaning and scope of the statute as well as its validity by pursuing a different rule of construction from what we recognize."

It may be conceded that there is ground for doubt whether the construction placed upon this statute by the Massachusetts court is not narrower than its terms require. It would be a reasonable construction to say that fences are required not only for the exclusion of cattle and for the benefit of adjoining owners, but for a notice and signal of danger, and as an obstacle and preventive of harm in urban districts frequented by children. One of the learned justices in Williams v. Great Western Railway Company, L. R. 9 Excheq. 157, said of a statute imposing a general duty of this character:

"It is not for us to speculate on what was the precise intention of the Legislature when they required that there should be a gate or stile on a footpath crossing on a level. It is sufficient to say that the defendants have neglected to comply with the enactment. * * * Then can it be inferred with reasonable probability that the accident occurred by reason of that negligence so as to make that a question for the jury?"

See, also, Hayes v. Michigan Central Railroad Company, 111 U. S. 228, 240, 4 Sup. Ct. 369, 28 L. Ed. 410; Baltimore & Potomac Railroad Company v. Cumberland, 176 U. S. 232, 20 Sup. Ct. 380, 44 L. Ed. 447; Atchison, T. & S. F. R. R. Co. v. Reesman, 60 Fed. 370, 373, 9 C. C. A. 20, 23 L. R. A. 768.

Nevertheless there is a considerable conflict of decision as to the proper construction of statutes of this kind, and there are in other states decisions supporting the views of the Massachusetts court. We find it unnecessary to review these decisions, however, since we are of the opinion that the construction of the Massachusetts statute is a local question upon which we accept the decision of the local court.

The defendant in error also contends that, even if not required by statute to maintain a fence, the defendant below was, upon common-law principles, negligent in failing to do so under the conditions proved in this case. The contention is that, because children were accustomed to play in the vicinity of the railroad tracks, "the defendant was bound to anticipate that children will be children," and to take precautions to prevent them from thoughtlessly running upon its tracks.

We think it doubtful if the testimony in this case was sufficient to show that the lot upon which the boy was playing, and from which he ran upon the tracks, was a playground or a place on which numbers of children were accustomed to play. There was evidence that children in considerable numbers were in the habit of playing on the railroad property and along the tracks; but examination of the record does not show that the testimony was directed to the specific proposition that considerable numbers of children were in the habit of playing on the unfenced lot, and of coming upon the tracks from this lot, so that the railroad company had special reason to regard this unfenced lot as an accustomed place of ingress for children thoughtlessly trespassing up-

on its tracks. Assuming, however, for the present, the sufficiency of the proof to establish the fact that this unfenced lot was a playground from which thoughtless children were in the habit of going upon the tracks, we have still an important question: Did this cast upon the railroad company the legal duty of erecting a fence to exclude such trespassers from its tracks, and does a failure to erect a fence make the railroad company guilty of negligence?

It is conceded by the defendant in error that "the Massachusetts rule appears to be that a railroad owes no duty to a trespasser, even though he be guilty only of a technical trespass, save not to injure him by wanton, willful recklessness."

It is contended, however, that the degree of care which the railroad company must exercise towards trespassers upon its right of way is a question to be settled upon general principles of law, and that this court will apply its own rules and not what may appear to be the Massachusetts rule. But as we view this case, there was no ground for holding that the railroad company was negligent in the operation of the freight train, or in a failure to discover and avoid the child after he came upon the track. The child ran quickly upon the track, and there is no contention that he could have been seen and avoided. The substance of the claim is that the railroad company was negligent in not keeping the child off its premises and preventing it from becoming a trespasser.

The defendant in error has cited no case, nor has any case come to our attention, which holds a railroad company liable for injuries upon the ground that it was its duty, in the absence of a statute, to build a fence or erect barriers, at places other than crossings, to exclude persons, whether children or adults, from its tracks. It may be true that in urban districts there is such danger to children as to justify legislation for their protection, imposing special burdens on railroad corporations, and to justify a court in construing a statute which in general terms requires a fence as intended for the protection of persons as well as cattle. In the absence of legislation, however, there is difficulty in assigning legal grounds for casting upon the railroad company, rather than upon parents or the public, the duty of safeguarding children.

The question of the duty to anticipate the presence of youthful trespassers, and to guard against accident to them, was before the Circuit Court in McCabe v. American Woolen Co., 124 Fed. 283, affirmed by this court 132 Fed. 1006, 65 C. C. A. 59. The defendant was charged with negligence in not fencing a mill trench on its lands, for the reason that children were known to be in the habit of frequenting the banks of the trench. The learned judge observed (page 287 of 124 Fed.):

"We think, therefore, that this canal was an object of such a character that both from the reason of the thing and the customs of the community, the defendant was entitled to assume that the plaintiff's natural guardians would protect him from any dangers attached thereto, as they easily could and ought to have done," and held that the action could not be maintained.

Dangers attend the operation of many other enterprises, and there are many places where the intrusion of a thoughtless child is a possibility. This general subject has received careful consideration from

the Honorable Jeremiah Smith, in 11 Harvard Law Review, 349–473, 434–448; and the legal difficulties of charging landowners with greater duties to children than to adults are well set forth in his article on "Liability of Landowners to Children Entering Without Permission."

As we understand the decisions, statutes requiring railroads to fence are not treated as declaratory of an existing and recognized legal duty, but as imposing upon the railroads new and further duties deemed essential or important for the safety of the public, the security of passengers and employés, or the protection of the property of adjoining owners. Legislation imposing such duties is justified as an exercise of the police powers of the state. Minneapolis & St. Louis Railway Company v. Emmons, 149 U. S. 364, 367, 13 Sup. Ct. 870, 37 L. Ed. 769. The creation of special duties of landowners, additional to those recognized at common law, is a matter for the Legislature in the exercise of its police powers, and not a matter for a jury. The proposition that because a landowner may have grounds for thinking that children may come upon his premises, and run into danger, he is thereby charged with the duty to fence his lands for their exclusion, cannot be regarded either as an established principle of general law to be applied by the federal courts, or as a rule which may or may not be applied at the discretion of a jury of a federal court sitting in a district where the state law is otherwise. To impose upon landowners duties in derogation of ordinary right, there must be the justification of the interests of the public generally, and the discretion is vested in the Legislature to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests. Lawton v. Steele, 152 U. S. 133, 136, 14 Sup. Ct. 499, 38 L. Ed. 385.

In Missouri Pacific Railway Co. v. Humes, 115 U. S. 512, 522, 6 Sup. Ct. 110, 113, 29 L. Ed. 463, it was said of a statute of Missouri requiring railroad corporations to erect fences:

"Authority for enacting it is found in the general police power of the state to provide against accidents to life and property in any business or employment, whether under the charge of private persons or of corporations."

In Minneapolis Railway Company v. Beckwith, 129 U. S. 26, 34, 9 Sup. Ct. 207, 32 L. Ed. 585, it was observed by Mr. Justice Field:

"It is true that, by the common law, the owner of land was not compelled to inclose it, so as to prevent the cattle of others from coming upon it, and it may be that, in the absence of legislation on the subject, a railway corporation is not required to fence its railway, the common law as to inclosing one's land having been established long before railways were known."

Apparently the Massachusetts court has taken the view that the duty does not exist under the principles of common law, and exists only so far as it is imposed by statute, and to those persons who are within the purview of the statute. The decision of the Supreme Court of Massachusetts in Morrissey v. Eastern Railroad Company, 126 Mass. 377, 30 Am. Rep. 686, is closely in point, and adverse to the contention that, independently of statute requirement, the railroad company was negligent in respect to a duty owed plaintiff's intestate. Due weight must be given to this decision of the state court, as well as to the decisions construing the statute of Massachusetts.

In Berlin Mills Co. v. Croteau, 88 Fed. 860, 32 C. C. A. 126, this court referred to the "broad and indefinite general proposition that, so far as there exist reasonable grounds for apprehending danger, a corresponding duty arises to take precautions," saying:

"The cases furnish much more specific rules to aid owners to understand their obligations. These specific rules are not inconsistent with, but are narrower than, that broad proposition."

The only principle of general law, so called, upon which the plaintiff relies, is the indefinite rule above referred to; but the decisions of Massachusetts courts upon the question before us furnish much more specific rules for the guidance of owners of land situated in Massachusetts. Cases may be conceived, of course, where it would be gross and wanton negligence for a railroad company to run its trains in the ordinary way, when its servants had knowledge that persons would probably be upon its tracks and would be injured; but the case before us is not of that character. The negligence charged is the failure to erect a fence to provide against a possible accident through the thoughtless act of a child in coming suddenly upon its tracks.

The opinion in McCabe v. American Woolen Co. shows that the decisions of the Supreme Court in Railroad Company v. Stout, 17 Wall. 657, 21 L. Ed. 745, and Union Pacific Railway Company v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434, relate to cases which on many grounds are distinguishable from the case before us. Furthermore, the element of "inducement" or "attraction" is entirely absent in this case.

As it is practically conceded that, under the Massachusetts decisions, the plaintiff could not recover, and as it has not been made to appear that the Massachusetts cases are inconsistent with any rule of the common law or of general law, or with the general trend of authority, we find no reason for applying in this case rules of law different from those applied by the state court. For the sake of harmony, and to avoid confusion, the federal courts will lean towards an agreement with the state courts if the question seems to them balanced with doubt. In Randolph v. Quidnick Company, 135 U. S. 457, 463, 10 Sup. Ct. 655, 657, 34 L. Ed. 200, it was said:

"As to the construction of a state statute, we generally follow the rulings of the highest court of the state, Bacon v. Northwestern Life Insurance Co., 131 U. S. 258, 9 Sup. Ct. 787, 33 L. Ed. 128, and cases cited in opinion; and, as to other matters, we lean towards an agreement of views with the state courts, Burgess v. Seligman, 107 U. S. 20, 34, 2 Sup. Ct. 10, 27 L. Ed. 359."

See, also, Clark v. Bever, 139 U. S. 96, 117, 11 Sup. Ct. 468, 35 L. Ed. 88.

We are of the opinion that the Circuit Court erred in refusing to instruct the jury as requested by the defendant:

"Upon all the evidence in this case, the plaintiff is not entitled to recover upon the first count in the declaration."

The judgment of the Circuit Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers its costs in this court.

ALDRICH, District Judge (dissenting). Quite independent of the Massachusetts statute, which requires suitable fences upon both sides of the entire length of every railway operating in Massachusetts, except at crossings of a public way, etc., with a proviso that the corporation shall also construct and maintain sufficient barriers to prevent the entrance of cattle upon the road, which seems to have been held by the Massachusetts courts to be a statute for the protection of cattle and not children, I query whether the obligation does not rest upon railroads, under the common law, to reasonably safeguard the public, by fence or other suitable barrier, against hazards incident to the exercise of dangerous agencies in a public place like that shown by the allegations and proofs. Is it not a question of fact whether a railroad is in the exercise of due care in running fast trains over tracks situated in compact parts of cities, at the modern rapid rate of speed, with its tracks situated like those in question?

The rights of adjoining owners and the rights of railroads are, of course, relative, each right existing with reference to the other. The highest degree of care on the part of parents could not keep children always away from unguarded tracks, exposed, as these were, and accessible through narrow passageways between buildings in the compact parts of cities. The usual high fence, in similar situations, which safeguards railroads and the public, would have doubtless saved this child. I query whether the statutory right to build and operate a railroad is so absolute as to entitle it to run its fast trains through compactly settled communities without reasonably safeguarding the public by suitable barriers at such an approach as the one in question. Is it not a question of fact whether the right is being reasonably exercised under such circumstances and with such disregard of the requirements of public safety?

The right to do a thing may be granted by legislative act, but, whether the grant regulates the manner of its exercise or not, the common law, under general principles, would not permit its exercise in utter disregard of the requirements of public safety. Under familiar and fundamental principles, whether it is an individual or corporation using dangerous and deadly agencies, whatever their nature, at times and in places where the public are likely to be, the obligation is upon them, as well as upon members of the public, to exercise due care in a given situation.

Should we look at railroads exercising quasi public rights under public grants for quasi public purposes, which are exercising the dangerous agency of running fast trains through compact parts of cities, in the same sense that we would look at landowners when it is sought to charge them with duty and obligation to the public in respect to the management of their private property on their private ground?

Is a rule of law which would require all the time of parents to keep their children from playing beyond an unguarded line between railroad ground and private property in passageways between buildings in compact parts of cities, when a few dollars' expenditure on the

part of railroads would erect a barrier which would make conditions reasonably safe, a reasonable rule of law?

Is not a determination of the rights of this child of tender years upon the ground that he was negligent, or that he was a trespasser, or upon the ground that the railroad was under no statutory obligation to fence, or common-law obligation to safeguard, the approach to its tracks, contrary to the humane spirit, the reasoning, and the authority of Union Pacific Railroad Company v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434, where the child walked into an unguarded slack pit, and where the Supreme Court held that the failure to erect the statutory fence was something to be considered on the question of negligence, and where it is said that the misconduct of the child bears no proportion to that of the defendant, that the duty of the defendant in respect to the safeguard, or the statutory fence, is a duty, not to the city as a municipal body, but to the public considered as composed of individual persons, and that each person specially injured by the breach of the obligation is entitled to his individual compensation and to an action for its recovery? See, also, Williams v. Great Western Railway Company, L. R. 9 Excheq. 157.

What might have been due and reasonable care in the exercise of the right to operate trains in such a situation in former days, when railroad trains were operated slowly through cities, might not be due care now, with respect to trains running over unguarded tracks through thickly-settled communities at the high rate of modern speed.

Is the fact that there is no reported decision based upon the common law, holding railroads to the exercise of due care under the circumstances in question, any reason why this case should not be governed by the general principles of a system which exists for the protection of the public, as well as for the protection of private or corporate rights to operate dangerous agencies?

In the case at bar the judge at the trial expressly instructed the jury that the absence of a fence was not, in and of itself, evidence of negligence on the part of the railroad. This would seem to be a sufficient compliance with the Massachusetts cases which hold that the statute was not for the protection of children but cattle.

The case was submitted to the jury distinctly and broadly on common-law grounds, and in accordance with the theory of Union Pacific Railroad Company v. McDonald, supra. The learned judge said:

"But in this case, gentlemen, I instruct you that you may consider the absence of a fence at this place in connection with all the circumstances as you find them established by the evidence here, upon the question whether or not the railroad used reasonable care in guarding against this accident. If you find, upon all the circumstances, that the defendant did not provide proper protection against accidents of this kind at that place, such protection as a reasonable person would provide under the circumstances as you find them, and if you find that the defendant was negligent under all those circumstances in that particular, then it will be proper for you to find that the defendant was negligent with regard to this matter."

Thus the question of liability was not determined upon the ground of a lack of a statutory fence, or upon mere lack of a fence, but under instructions upon the theory of a common-law obligation, where the question of negligence was to be determined by the jury in view of

the facts that children used this narrow approach as a playground, that it was in a compact part of the city where children were liable to be, that fast trains were run, and upon consideration of the question whether, under all the circumstances, the defendant in the exercise of its dangerous agency provided, not a statutory fence, but, such reasonable safeguards and protection against accident as a reasonable person would provide under the circumstances.