(89 App. Div. 481.)

### HOPKINS v. CROMWELL.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. ASSIGNMENT FOR CREDITORS — PREFERENCE — EMPLOYÉS — WHO ARE — EVIDENCE.

Laws 1897, p. 772, c. 624, § 29, enacts that, on a distribution of assets under an assignment for benefit of creditors, the wages of employés earned within a year of the assignment shall be preferred. Plaintiff contracted in the name of a corporation with farmers for pickles, which, on delivery to him, were prepared by him and shipped to the corporation; plaintiff's compensation from the corporation being based on the amount of pickles shipped. There were no persons under him, except a few at intervals. The corporation called him a "superintendent." *Held*, that he was an employé, within the statute.

Appeal from Special Term, Westchester County.

Suit by Eliza T. Hopkins against David Cromwell, as substituted trustee, etc., under an assignment of the F. Foehrenbach Company for benefit of creditors. From a judgment for plaintiff, defendant appeals. Affirmed.

Following is the opinion of the trial court (Jenks, J.):

The issue arises upon the application of section 29, c. 624, p. 772, Laws 1897, as amended, which provides: "In all distribution of assets under all assignments made in pursuance of this act, the wages or salary actually owed to the employés of the assignor or assignors at the time of the execution of the assignment for services rendered within one year prior to the execution of such assignment, shall be preferred before any other debt owing. and should the assets of the assignor not be sufficient to pay in full all the claims preferred pursuant to this section, they shall be applied to the payment of the same, pro rata to the amount of each of said claims." There is no dispute as to the services rendered within the prescribed period, or as to their worth, but the question is whether the plaintiff was an employé entitled to wages or salary, and therefore to a preference afforded by the statute. This and similar legislation is. the protection of those who serve in more subordinate

and humble capacities, and who naturally would suffer if their compensation was not surely and speedily paid. Bristor v. Smith, 158 N. Y. 157, 53 N. E. 42. To this end, the statute has preferred those who depend upon their daily work for the means of life to the dealers or independent contractors who take the chances of trade, or who extend credit in the ordinary risks of business, to the professional man, or to the high official of the corporation; in fine, to those who have, presumably, other means of subsistence or capital, or can protect themselves, or who, in any event, are not naturally dependent upon the solvency of one individual. While the word "employé" is not to be read with full generic force (Palmer v. Van Santvoord, 153 N. Y. 612, 47 N. E. 915, 38 L. R. A. 402), it has been adjudicated to embrace more than the words "operative or laborer." In the matter of The American Lace Works, 30 App. Div. 323, 51 N. Y. Supp. 820, Willard Bartlett, J., says: "It may be said generally that the term 'employé' includes persons employed by the corporation in comparatively subordinate positions, which cannot correctly be described as either operatives or laborers." In Bristor v. Smith, supra, Gray, J., discussing the scope of the term as used in section 54, c. 688, p. 1841, Laws 1892, says that the word defines "in a general way such persons as were engaged in serving the corporation in subordinate capacities." In Palmer v. Van Santvoord, supra, in the course of a discussion of the term, Andrews, J., says that it must be recognized as "including in the designation all who in common understanding hold that relation to the corporation." See, too, People v. Beverage Brewing Company, 91 Hun, 315, 36 N. Y. Supp. 525.

I am of the opinion that plaintiff was an employé, within the purview of this statute. The assignor of the defendant was a corporation engaged in the wholesale pickle business in the city of New York. The plaintiff lived at White Plains. The corporation would name to him a price which it would pay for pickles to the farmers in the vicinity of White Plains, and the plaintiff would call upon those farmers and contract with them, but in the name of the corporation, for the pickles. In due course, from time to time, the plaintiff received the pickles at the factory, and then sorted them, weighed them, prepared the brine, changed it as necessary, and inspected the stock. He then changed the pickles from the ordinary barrels to new barrels, and shipped them as often as ordered by his principal. This work represented the manual labor of the plaintiff, who was employed thereon every day, and often upon Sundays. He had none under him, save that the corporation sent up some coopers, for three or four weeks in the spring, to cooper the barrels; save that sometimes, when the shipments were unusual, he called in his own man of all work, who worked for him the year 'round, at his own house; save that sometimes on Saturdays a lad assisted him in running the brine; and save occasionally he was compelled to call in a man and wagon for two or three hours.

Stress is laid upon the fact that the corporation dubbed the plaintiff its "superintendent," or its "superintendent at White Plains." A position is not classified by its title, but by the duties incident to it. Nomenclature cannot alter the facts that here was a subordinate engaged in daily manual labor, who superintended nothing more than to see that his own work was properly done, and that the orders of his superiors were obeyed by himself. The plaintiff had no concern with the corporation, or its financial business, its policy, or its management. Even the farmers who supplied the pickles, under the contracts with the corporation, were paid at the office of that corporation, in the city of New York.

The relation of the plaintiff to the defendant's assignor brings him within the preferred class of employés, as that term is interpreted in Palmer v. Van Santvoord, and the other authorities supra. There was no feature of the services that placed the plaintiff in the plane of the attorney in Bristor v. Smith, supra, or of the superintendent in the Remington Case, 45 Hun, 329, or of the occasional drawman in the Kimberly Case, 37 App. Div. 106, 55 N. Y. Supp. 1024. While such services should not be classified with those of subordinates, considered in the Matter of Stryker, 158 N. Y. 526, 53 N. E. 525, 70 Am. St. Rep. 489, it is to be noted that the Stryker Case, like several others somewhat contra, construes an act of more restricted phrase, in that the apt words there are "wages," and not "wages or salary," while the subjects of

the statute are designated as "operatives and laborers," and not "employés."

The compensation of the plaintiff was 20 cents for every 100 pounds of pickles purchased from the farmers, when delivered on the cars, which was to become due when the pickles were so delivered; that is, after the plaintiff had expended his labor as indicated above upon them, and when they were shipped to his principal. Broadly, the word "salary" means a recompense or consideration made to a person for his pains or industry in another man's business. Jacob, quoted in Abbot's Law Dictionary. Whether it be derived from "salarium," or more fancifully from "sal," the pay of the Roman soldier, it carries with it the fundamental idea of compensation for services rendered. Indeed, there is eminent authority for holding that the words "wages" and "salary" are, in essence, synonymous. In Commonwealth v. Butler, 99 Pa. 542, Sharswood, C. J., says: "According to the most approved lexicographers, the words 'wages' and 'salary' are synonymous. They both mean one and the same thing—a sum of money periodically paid for the services rendered. * * * The truth is, as the lexicographers seem to hold, that if there is any difference, in the popular sense, between salary and wages, it is only to the application of them to more or less honorable services. * * * A merchant pays wages to his servant who sweeps the floor, makes the fire, and runs errands, but he compensates his salesman or clerk by a salary. How can it make any difference in what way the compensation is ascertained?" In S. & N. A. R. Co. v. Falkner, 49 Ala. 115, B. F. Safford, J., says: "The term 'wages' indicates inconsiderable pay, without excluding salary, which is suggestive of larger compensation for personal services, but its application to laborers and employés certainly confuses the idea of a subordinate." I think the Legislature employed the words "wages or salary," while practically equipollent, for the purpose of fully describing the compensation which is to be paid to employés, inasmuch as that term, while embracing operative or laborer, means something more. The final question in every case is whether the subordinate, tested by the character of his services and the nature of his relation, is an employé, within the protection of the statute, whose compensation may be fairly said to be wages or salary, within the accepted scope of these terms; and the fact that the compensation in this case was practically paid for piecework (that is, for pickles after they were sorted, properly treated, and forwarded for the principal, as the result of plaintiff's manual labor) should not exclude the plaintiff from the benefits of this statute. In re Luxton & Black Co., 35 App. Div. 243, 54 N. Y. Supp. 778.

Judgment for plaintiff, with costs.

Argued before BARTLETT, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Francis Cantine, for appellant.
Wilson Brown, Jr., for respondent.

PER CURIAM. At the trial there appeared to be no dispute as to the worth of the services rendered within a year prior to the assignment for the benefit of creditors, and for that reason the opinion of Mr. Justice Jenks at Special Term does not discuss that branch of the case. The question which he treated in his exhaustive opinion we believe properly decided by the learned justice at Special Term, and we adopt the opinion delivered below on that branch of the case.

The appellant urges here that, upon the plaintiff's own showing, part of the services rendered to the defendant's assignor were performed prior to one year before the date of the assignment, in that some of the cucumbers of the crop of 1896 were bought and cured by him prior to the 25th of April, 1897, although shipped thereafter. Called in rebuttal and cross-examined by the defendant, the plaintiff testified, however, that "twenty-six car loads of pickles were bought,

cured, made, and shipped between April 25, 1897, and April 25, 1898," the date of the assignment. Elsewhere in the evidence he said that the cars averaged 90 barrels to the car, and 350 pounds to the barrel. At 20 cents per 100 pounds for his work and services in connection with these 26 car loads, he appears to be entitled, for "services rendered within one year prior to the execution of such assignment" (Laws 1897, p. 772, c. 624, § 29), to the full sum demanded, after deducting the payments made to him by defendant's assignor.

The judgment should be affirmed, with costs.