### WINDHURST v FORD

Ohio Appeals, 3rd Dist, Marion Co

No 840. Decided Feb 14, 1936

H. E. Johnson, Marion, for plaintiff.

John H. Clark, Marion, C. C. Fisher, Marion, Wilhelm & Robinson, Marion, for defendants.

## OPINION

By GUERNSEY, J.

This case comes into this court on appeal from the Common Pleas Court of Marion County, Ohio.

On July 2, 1935, the plaintiff Florence Windhurst filed her petition in the Common Pleas Court against the defendant Lew H. Ford as assignee for the benefit of creditors of The Waldorf Pharmacy Company, alleging in substance:

That on August 11, 1933, The Waldorf Pharmacy Company, an Ohio corporation, which was then and for some time prior thereto had been engaged in conducting a store in the City of Marion, Ohio, for the sale of drugs, wall paper and sundries at retail, being then insolvent made an assignment for the benefit of all its creditors to the defendant Lew H. Ford by deed of assignment duly executed and filed in the Probate Court of Marion County, Ohio, and that thereupon said Ford was duly appointed and qualified and is acting assignee for the benefit of all the creditors of said company.

That on January 21, 1930, the plaintiff was hired by the board of directors of said company as a clerk and assistant manager of said company for the term of five years at a salary of $750 per year, or $62.50 per month; and that as such she was the assistant operative of said retail store of said company, her duties consisting of managing postcard department, buying stock for same, assisting in displaying drugs, wall paper and sundries, wrapping and delivering packages; clerking and doing and performing all such duties as were required of her as such clerk or as ordered by the manager.

That on the date of said assignment there was due and owing from said company, as wages for her services aforesaid, the sum of $455, and that on August 15, 1935, she caused to be executed and filed with said assignee, her sworn claim for said sum as a preferred claim, and on October 15, 1933, said assignee allowed said claim as a preferred claim in the sum of $300 and indorsed his allowance thereon; that afterward The Marion County Bank filed in said Probate Court its demand and bond as provided by law demanding that said claim be disallowed and thereupon same was disallowed.

The prayer of the petition is for an order requiring the defendant to allow said claim as a preferred claim in the sum of not less than $300 as against said company's assets, and for other relief.

To this petition the defendant Ford filed his answer in which he admits that The Waldorf Pharmacy Company was a corporation and made an assignment for the benefit of creditors, as alleged in the petition; and that he is the duly appointed qualified and acting assignee.

He further admits the allowance by him as assignee, of plaintiff's claim as a preferred claim in the sum of $300; the indorsement of said allowance thereon and the subsequent disallowance of said claim by him on requisition of The Marion County Bank Company, as alleged in the petition.

The defendant assignee then denies each and every allegation contained in plaintiff's petition not specifically admitted to be true.

The Marion County Bank and The Harding Publishing Company, creditors of said pharmacy company, who were subsequently made parties defendant in said action, filed their separate answers therein.

In these answers the defendants deny that the plaintiff was employed as assistant operative as alleged in her petition and that there is any sum of money due her from said company as wages for her services.

They allege that at the time of said assignment and for several years prior thereto said company had issued and outstanding, only seventy-seven shares of stock; that seventy-four of said shares were owned by the plaintiff and two of said shares were owned by William G. Windhurst the husband of plaintiff; and that plaintiff was assistant manager and secretary treasurer of said company during all the time that she alleges there was owed her wages; that her said husband was president and general manager during all of said time; that said company for more than five years last past was conducted solely for the benefit of plaintiff and her husband.

Following trial and judgment in the Court of Common Pleas the plaintiff appealed the case to this court and the defendants filed a motion in this court to dismiss the appeal on the ground that this case is not one in chancery within the meaning of **§6 of Article 4 of the Ohio Constitution,** and therefore not appealable.

At the time this case was heard in this court this motion was taken under advisement by the court, and without prejudice to the rights of the defendants under said motion and subject to decision on said motion, this case was then submitted to this court on a transcript of the evidence in the lower court, together with additional evidence taken in this court. We will therefore first pass on the motion to dismiss.

The object of this action is to compel the allowance of a claim of a creditor as a preferred claim against funds of an assignor debtor in the hands of an assignee for the benefit of creditors. The right, if any, to the allowance of the claim as a preferred claim is based solely on statutory provisions.

In this country voluntary and general assignments by failing debtors, of their property to trustees upon trust to pay the creditors of the assignor, are generally recognized and treated as active trusts enforceable by courts of equity. Pomeroy's Equity Jurisprudence, Fourth Edition, Volume 3, §993 and note 994. This rule is recognized in the case of **Webb, Receiver v Stasel, Receiver, 80 Oh St 122.**

Except as restricted by statute, the Court of Common Pleas has such jurisdiction in equity as courts of chancery had at common law. **Madden v Shellenbarger, 121 Oh St 401.**

As assignments for the benefit of creditors are active trusts originally recognized as subjects of chancery jurisdiction, an action to compel the allowance of a claim against the trust property is an action in chancery and is within the equitable jurisdiction of the Common Pleas Court, unless the fact that there are statutory provisions providing a similar remedy changes the action from one at chancery to one at law.

It is the law of Ohio as established by the cases of **Feucher v Keyl et, 48 Oh St 357, and City of Zanesville v Fannan, 53 Oh St 605,** that where a new remedy is given by statute for a right of action existing independent of it, without expressly excluding any former remedy, the statutory remedy is cumulative merely. **Wagner v Armstrong, 93 Oh St 443.** There is no provision of the statutes relating to assignments expressly excluding the former chancery remedy and in fact the statutory provisions authorizing such action are merely a restatement and adoption of such remedy. Consequently the nature of the action is not changed from one in chancery.

While the right to preference in the case at bar is entirely statutory, equity follows the law and as the Common Pleas Court had chancery jurisdiction to compel the al-

lowance of the claim against the trust fund, such jurisdiction necessarily included the right to adjudicate the allowance of a preferential claim therein whether the right to such preference is based upon equitable principles or statutory provisions.

The case therefore constituted a chancery case and was appealable to this court under the provisions of §6 of Article 4 of the Constitution, and the motion to dismiss is therefore overruled.

We will therefore turn to a consideration of the case on its merits.

In addition to the facts admitted by the pleadings, the following material facts appear in evidence:

The Waldorf Pharmacy Company was incorporated under the laws of Ohio in June, 1910, with an authorized capital of $5000 divided into one hundred shares of $50 each and shortly after the completion of the organization and the transfer of the property and business of The Waldorf Pharmacy Company owned by Florence Windhurst, to the corporation, Florence Windhurst became the owner and holder of seventy-four shares of its capital stock, her husband William G. Windhurst the owner and holder of two shares and Homer E. Johnson the owner and holder of one share out of a total of seventy-seven shares outstanding, and that such stockholders continued to hold such shares respectively until the making of the deed of assignment by the corporation referred to in the pleadings.

That Articles 3, 4 and 5 of the code of regulations of the company were amended January 17, 1911, so as to read as follows:

"Article 3. The officers of this company shall be a president, a vice-president and a secretary-treasurer, who shall be elected annually by the board of directors."

"Article 4. The president shall preside at all meetings of the board of directors and shall issue call for special meetings of the board of directors or of the stockholders whenever necessary."

"Article 5. The secretary-treasurer shall keep record of stockholders and directors meetings, and shall keep the books of account of this corporation."

These amendments remained in effect until the date of the assignment hereinbefore referred to.

The original code of regulations contained a provision which also remained in effect until the said deed of assignment reading as follows:

"Article 7. Duties of General Manager. A general manager to conduct the business of the corporation with authority to purchase supplies and merchandise and pay for the same by warrant or check, to hire additional help, and to suggest to the directors such procedures as may be of benefit to this corporation may be appointed by the president on such terms and salary as may be fixed by the directors."

On January 17, 1911, W. G. Windhurst was elected president of the corporation and by election from time to time thereafter served as president of the corporation from said date until the date of the assignment, and Florence Windhurst was at the same time elected secretary-treasurer of the corporation and by re-election thereafter continued to serve in such capacity from said date until the date of the assignment. Florence Windhurst also served as a director of the company from the time of its organization until the time of such assignment. From the time of the organization of the corporation until the date of the assignment W. G. Windhurst was also employed as pharmacist and general manager of the corporation. And on January 20, 1914, Florence Windhurst was by the vote of the directors employed as assistant manager and buyer in greeting card and sundries department at a salary of $10 per week, and was thereafter re-employed from time to time in the same capacity until January 21, 1930, when she was re-employed as assistant manager for the ensuing five years at a salary of $750 per year.

Neither the regulations, by-laws nor the minutes of the company provide for salaries for the president and secretary-treasurer, and no provision is made for the employment or compensation of W. G. Windhurst or Florence Windhurst except as hereinbefore mentioned.

That for the period of several years prior to the making of the assignment and during the entire period in which the claim of the plaintiff accrued, W. G. Windhurst and Florence Windhurst were the only ones regularly employed at the store conducted by the company, (which was the only business conducted by the corporation) although during the busy season at the store which would extend for a period of three or four months in each year, another person would be employed to assist in the work at the store. Except for absences

aggregating about three days to the year W. G. Windhurst was at all times present at the store during the conduct of the business. Florence Windhurst was also present at all times during the presence and absence of W. G. Windhurst from the store, and in his absence did such things as were necessary to carry on the business.

That it was the custom of Florence Windhurst during this period to come to the store shortly after eight o'clock in the morning and work there until about nine o'clock at night. Her work consisted in acting as buyer in greeting cards and sundries departments, displaying merchandise, waiting on trade, clerking, wrapping parcels, preparing displays of wall paper, assisting in the janitor work and doing such other work as necessary in carrying on the business. She also assisted in preparing wall paper for sale. Her salary was paid to her by W. G. Windhurst out of cash receipts until some time prior to the assignment, when there was insufficient funds on hand to pay her, during which period the indebtedness of the company to her for her compensation accrued so that it amounted to the sum of $445 at the time the assignment was made.

The plaintiff bases her claim for preference on the provisons of §§8339 and 11138 GC, the pertinent parts of which read as follows:

"Sec 8339 GC. Laborers and employees of any persons, association of persons or corporation, whether such employment be at agriculture, mining, manufactory or other manual labor, shall have a lien upon the real property of their employers for their wages * * *. In all cases when property of an employer is placed in the hands of an assignee, receiver or trustee, claims due for labor performed within the period of three months prior to the time such assignee, receiver or trustee is appointed, shall first be paid out of the trust fund, in preference to all other claims against such employer, except claims for taxes and the costs of administering the trust."

"Sec 11138 GC. Taxes of every description assessed against the assignor upon personal property held by him before his assignment must be paid by the assignee or trustee out of the proceeds of the property assigned in preference to any other claims against the assignor. Each person who has performed labor as an operative in the service of the assignor, within twelve months preceding the assignment, shall be entitled to receive out of the trust fund, before the paying of other creditors, the full amount of wages due for such labor not exceeding three hundred dollars."

The latter section was originally known as §6355, Revised Statutes, and was first adopted on March 6, 1861, and except that the period in which the preference was given for labor performed was limited to six months instead of twelve months and the amount from $100 to $300, as provided in the amendment hereinafter mentioned, is in practically the same form as it is in today.

The original section was amended April 5, 1889, the amendment now being incorporated in §11139 GC. This amendment relates, however, only to the matter of priorities over other claims and did not change the original enactment except that the protective period was extended to twelve months and the amount was extended from one hundred dollars to three hundred dollars.

Sec 8339, GC, which was known as §3206-a Revised Statutes, was first enacted April 18, 1883, and incorporated the provisions now appearing in §§8340 and 8341 GC, as well as the provisions of §8339 GC, and is in the same form today as when originally enacted.

In the case of St. Marys Machine Company v National Supply Company et, 68 Oh St 535, at page 540, in the opinion it is stated that §6355, Revised Statutes, now §11138 GC is in pari materia with §3206-a, Revised Statutes, now §8339 GC, and that both sections must be read and construed together.

It is further stated in the opinion, at pages 541 and 542, that:

"Under the one section a labor claim includes all labor within twelve months, not exceeding three hundred dollars, and under the other the period is only three months with no limitation as to the amount. In this regard there seems to be some conflict, but in any particular case the laborer should be allowed to invoke the provision most favorable to himself."

Applying these rules of construction and taking into consideration the dates at which the two sections were originally enacted, it is clear that the provisions of §8339 GC, being a later enactment than the provisions of §11138 GC, are intended to cover and apply to and for the benefit of laborers and employees who do not come within the classification provided in §11138 GC of a person who has performed labor as an op-

erative in the service of the assignor as well as those who do come within such classification, with the right of election to the latter of claiming either under this section or under the provisions of §11138 GC.

At the time of the original adoption of §11138, GC, Revised Statutes, §6355, in 1861 the generally accepted definition of an "operative" as shown by the 1868 edition of Webster's Dictionary, was "a laboring man; a laborer, artisan or workman in manufactories."

As the work performed by the plaintiff was performed in a store, and did not relate to any manufacturing process, and did not require a painful exertion of strength, she is not an operative within the meaning of §11138, GC, and consequently does not come within the purview of such section.

The question then to be determined is whether the plaintiff comes within the purview of §8339, GC.

While the plaintiff was secretary-treasurer of the corporation the work performed by her for which she is claiming compensation and preference is not in any way referable to her duties as secretary-treasurer as these duties are defined in the regulations, and do not comprehend any of the services for which she is claiming compensation. Neither is the work performed by her referable to her duties as a director of the corporation. In addition to her official relationships to the company as director and secretary-treasurer, a relationship existed between the company and her, of master and servant or employer and employee by virtue of her employment by the board of directors as hereinbefore set forth, and the services for which she is claiming compensation were rendered under and by virtue of such employment. While the title by which she was designated in the resolutions of employment tends to indicate an employment other than an employment at manual labor, the actual facts as shown by the evidence are that except for about three days a year she was engaged solely in manual labor and that even during these periods of absences of her husband, the general manager, the services performed by her were predominantly manual labor.

Under the situation as it actually existed at the store, she managed no more than to see that her own work was properly done and the orders of her superior were obeyed by herself, and as applied to her work, we adopt the language of the trial judge in the case of Hopkins v Cromwell, 1903, 89

Appellate Division, 481, 85 New York Supplement, 839:

"A position is not classified by its title but by the duties incident to it. Nomenclature cannot alter the facts that here was a subordinate engaged in daily manual labor, who superintended nothing more than to see that his own work was properly done and that the orders of his superiors were obeyed by himself."

We therefore hold that the work for which the plaintiff is claiming compensation and preference, is manual labor within the meaning of §8339 GC.

The question then arises as to whether the plaintiff is precluded from making such claim by reason of her occupying during the period such labor was performed, the office of director and secretary-treasurer of the company, or by reason of the fact that she was and is the holder of seventy-four of the seventy-seven outstanding shares of the company.

As above stated, the work performed by the plaintff was not referable in any way to the duties of director or secretary-treasurer of the company and was referable only to her employment by the board of directors of the company.

A person may be an officer of a corporation and may at the same time have a contractual relation with it separate and apart from his relationship to the company as such officer, and where such contract exists it is enforceable in the same manner as any other contract of the corporation. In re Assignment of Armleder Plumbing Company, 20 O.C.C. 699; In re Eagle Ice and Coal Company, 241 Federal Reporter 393, 394, 395. In re Roberts Co., 193 Federal, 294.

In the case at bar the plantiff had a contract of employment with the corporation which she performed by doing manual labor for the corporation, which brings her within the purview of §8339 GC.

There is no provision in §8339, GC limiting its protecton to persons who are not officers or stockholders of a corporation and a construction of this section which would preclude the plaintiff from the benefit of such section by reason of her position as officer and stockholder of the corporation would be judicial legislation. We consequently hold that neither her position as officer or stockholder of the cor-

poration precludes her from the benefit of the provisions of such section.

The plaintiff is, therefore, under the provisions of §8339, GC, entitled to allowance as a preferred claim against the assigned property in the amount, to-wit, the sum of $187.50 due her for labor performed within the period of three months prior to the time of the appointment of the assignee, and is entitled to allowance of the balance of her claim amounting to $257.50, as a general claim, and decree will be entered accordingly.

## CONCURRING OPINION

By CROW, J.

So far as the judgment goes in amount, it is, in my opinion undoubtedly correct, as is also the reasoning in support of it, on the question of the right of plaintiff to participate in the fund as a preferred creditor, pursuant to her employment in the work of conducting the business by her labor in the sales made in the store and her other work incident to the conduct of the business pursuant to the action of the board of directors in employing her.

No salary was provided for her as either secretary and treasurer or as a director, and she seeks no compensation for such services, her claim being solely for what she did in the manual operation of the drug store.

It is clear to me that she "performed labor as an operative in the service of the assignor" and is entitled to a decree of preference for three hundred dollars, within the terms of §11138, GC. 3 Ohio Jurisprudence, pages 490 and following.

When that section was enacted the word "operative" meant generally, and it now so means, when applied to a natural person, one who operates or participates in operation, and there is nothing at all in the section to evince an intent that it was used in any other than the general sense.

If she was not such operative, the reasoning of the opinion in 236 Federal 29, though dictum, would exclude her from the preference provided by §11138, GC, but the reasoning, also dictum, in 68 Oh St 535, would, if she was an operative, make either §8339, GC or §11138 GC, applicable to her claim, as she may choose and she has chosen the latter.

## DISSENTING OPINION

By KLINGER, PJ.

There is no conflict as to the facts. Florence Windhurst owned all but three shares of the stock that had been issued by the corporation; her husband owned two shares, and one other share was issued. Her husband was elected president and she was elected secretary-treasurer. Ninety two percent of the stock of the company was owned by plaintiff. The record shows that this plaintiff was employed as assistant manager at a salary of seven hundred and eighty dollars a year. She was not employed as a laborer and there is no evidence to show what the services she claims she performed as a laborer were worth.

Secs 8339 and 11138, GC, referred to by the court in its opinion in this case, provide that in case of insolvency of a corporation the laborers in the employ thereof shall have a lien upon the assets for the amount of wages due them which shall be paid prior to any other debt of the company. And the word "laborers" should be construed to include all persons doing labor or service of whatever character for or as workmen or employees in the regular employ of such corporation.

The question is, is the owner of ninety-eight per cent of the stock, and the secretary-treasurer of the company, when engaged in and about the business of the company, whatever its character may be, a laborer within the contemplation of the act? Can the members of a corporation, especially the member who owns practically all the stock of the company, employ themselves and in the case of failure, stand upon the statute allowing preference over other creditors? Does the statute mean to go so far as to empower the directors of a corporation to employ themselves as workmen and laborers to do all the work and labor necessary to be done, and then in case of insolvency give themselves the statutory lien prerogatives and prefer themselves to general creditors? I do not believe that this was the intention of the legislation.

Authorities directly in point are not numerous. The only case that I have been able to find that in my opinion is identical with the case at bar, is the case of England's Executors v Daniel F. Beatty Organ & Piano Company, 41 New Jersey Equity 470, and found also in 4 Atlantic Reporter page 307. See also Trust Company v Casey, 115 SW page 780; In re Peninsula Cut Stone Company, 82 Atlantic 689. Alexander v Farrow, 66 SE 209. In re Crown Point Brush Company, 200 Federal 882. Arnold v Knapp, 84 SE 895.

In the case at bar the plaintiff Florence Windhurst really owned the company and she and her husband operated and man-

aged the company. In other words, this plaintiff made the company insolvent. I am not saying that she was guilty of intentional wrong-doing but it was under her management that the insolvency occurred, and it certainly was not the intention of either or both of the Sections relied upon in this case, to give preference under those circumstances.

As cited in one of the briefs, "To be an operative and entitled to the protection of §11138 GC the claimant must be a person employed in such a capacity that he need such protection and is without authority to draw money from the employer's funds but is wholly dependent upon the security given him by the law." **6 C.C. page 351. Davis v Greenleaf, 13 C.C. 229.**